DAVID SCHER, California Bar No. 184562
THE EMPLOYMENT LAW GROUP, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
dscher@employmentlawgroup.net
(202) 261-2802
(202) 261-2835 (facsimile)
*Counsel for Plaintiff Tim Galli*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TIM GALLI,** | **First Amended Complaint** |
| Plaintiff, | |
| v. | CASE NO. 3:09-cv-03775-JSW |
| **PITTSBURG UNIFIED SCHOOL DISTRICT, BARBARA WILSON, and PERCY MCGEE** | |
| Defendants. | |

## FIRST AMENDED COMPLAINT

### INTRODUCTION

1.      Plaintiff, Tim Galli (Galli) files this First Amended Complaint for retaliation under the California Whistleblower Protection Act, Ca. Gov. Code, § 8547 *et seq.* and under the Reporting by School Employees of Improper Governmental Activities Act, Ca. Ed. Code, § 44110 *et seq.* and for deprivation of First and Fourteenth Amendment Constitutional rights under 42 U.S.C. §1983, against Defendants Pittsburg Unified School District ("PUSD"), Barbara Wilson, and Percy McGee, in their official and individual capacities (collectively "Defendants").

2.      During Galli's employment with PUSD, he uncovered financial improprieties in

The Employment Law Group, P.C.
888 17th Street, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

violation of California law, which he disclosed on numerous occasions to Defendants.

3.      First, in or around late May of 2008, Galli became aware of certain budgetary practices he found both questionable and concerning.  Galli expressed his concern to PUSD Assistant Superintendant of Business, Mark Bonnett about what he believed may have been PUSD's improper allocation of deferred maintenance funding for the adult education roofing renovation project.

4.      Then, in or around September of 2008 Galli raised additional concerns to Bonnett, which formed the basis for Galli's disclosures going forward.  Galli's concerns included: (1) improper use of deferred maintenance funding; (2) the possible improper encroachment by the adult education program into the general fund and the ADA funding stream for K-12; (3) the apparent failure of the adult education program to pay operational costs in water and electrical in addition to failing to contribute for maintenance, grounds, and technology services; and (4) violations committed during the modernization of the Boy's and Girl's club.

5.      Beginning in or about early September of 2008 and continuing through the vote to recommend his termination in May of 2009, Galli repeatedly raised these issues to Bonnett, PUSD Superintendant Barbara Wilson, PUSD Board of Trustees President Ruben Rosales, and PUSD Board of Trustees members Percy McGee, Jr. and Joe Arenivar.

6.      In or around late October or early November of 2008, Galli sought an opinion from counsel for PUSD regarding these issues.  Galli sent this opinion to Bonnett, McGee, and Arenivar.

7.      Galli received no response from Defendants.  When he raised the issues verbally with Bonnett, Bonnett told Galli to do his own research into the issues because Bonnett did not trust attorneys.  In or about early December of 2008, Galli provided Bonnett with a memorandum stating that PUSD was violating California law.

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

---

**FIRST AMENDED COMPLAINT**

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

8.      After receiving no response from Bonnett, Galli also provided this memorandum to McGee, Arenivar, and Rosales.

9.      Also during the end of 2008 and into 2009, Galli became aware of a financial conflict of interest between McGee and Wilson.  Specifically, McGee was a financial advisor with Merrill Lynch and one of his clients was Wilson.

10.     On or about February 9, 2009 Galli e-mailed another memorandum to Board of Trustees' members McGee, Arenivar, and Rosales attaching additional clarification regarding the Adult Education financial practices.

11.     Aside from the memorandums Galli circulated, he continued to raise his concerns verbally and via e-mail to Bonnett, Wilson, and members of the Board of Trustees.  Defendants continued to ignore him.

12.     Galli's final disclosure prior to PUSD's retaliation occurred on or about March 3, 2009.  Galli emailed Wilson, copying McGee and Arenivar, clarifying a public statement Wilson made regarding the transferring of title for the Boy's and Girl's Club.  Wilson responded almost immediately via e-mail, stating angrily "Why are you doing this? Why are you asking these questions?"

13.     That same day, on or about March 3, 2009, PUSD placed Galli on administrative leave, allegedly due to misconduct.

14.     On May 13, 2009, Wilson filed charges against Galli for Galli's immediate suspension and dismissal with the PUSD Board.

15.     On May 14, 2009, PUSD voted to recommend Galli for termination, placing him on unpaid administrative leave.

16.     On or about June 24, 2009, the Board allegedly approved supplemental charges that

---

**FIRST AMENDED COMPLAINT**

were brought against Galli, recommending his termination.  PUSD served the Supplemental Notice of Intent to Immediately Suspend and Dismiss Galli that same day.

17.     Even though the Board was aware of the financial relationship between McGee and Wilson, who brought the charges against Galli, McGee participated in both votes to recommend Galli's termination.

18.     Galli, having been effectively terminated and constructively discharged, unable to support his family and on the verge of losing his home, was forced to apply for retirement in or around late July of 2009.

19.     PUSD dismissed the charges against him on or about August 6, 2009 and the hearing process pursuant to California Education Code section 44944 *et seq.* ended.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction of this action by reason of 28 U.S.C. § 1331 because the case involves a federal question under 42 U.S.C. §1983.

21.     This Court has personal jurisdiction over Defendants because they can be found, reside and/or transact substantial business in this judicial district.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because this is the district in which all Defendants reside and where the events giving rise to this claim occurred.

23.     This Court has jurisdiction over Galli's claim for declaratory/injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

24.     Galli has complied with all administrative pre-requisites to the filing of this Complaint.

25.     Following the PUSD Board vote to recommend termination, PUSD pursued

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

**FIRST AMENDED COMPLAINT**

CASE NO. 3:09-cv-03775-JSW

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

1  termination proceedings under Cal. Ed. Code §44944 *et seq.* through the Office of Administrative

2  Hearings against Galli.  That process has ended.  During the course of that proceeding, PUSD

3  agreed to waive any right to assert estoppel, res judicata or any other type of preclusion at any time

4  with respect to the claims raised in this Complaint.

**INTRADISTRICT ASSIGNMENT**

26.     Pursuant to Civil L.R. 3.2, assignment to the Oakland or San Francisco Division is

proper because a substantial part of the events which form a basis of this claim occurred in Contra

Costa County.

**PARTIES**

27.     Plaintiff Galli resides in Antioch, California.  He was employed as the Director of

New Construction, Maintenance, Operations, Facilities, Grounds, Technology, and Career

Technical Education with the Pittsburg Unified School District at the time of his constructive

discharge.

28.     The Pittsburg Unified School District is a K-12 district that serves the community of

Pittsburg, California.  The school district serves over 9500 students in Kindergarten through twelfth

grade.  The district is comprised of eight (8) elementary schools, two (2) middle schools, one (1)

comprehensive high school, one (1) continuation high school, Adult Education, Independent study

and alternative learning experiences, and Preschool Services.

29.     Defendant Barbara Wilson resides at 32 Scenic Drive Orinda, CA 94563, Contra

Costa county.  Wilson is the Superintendant of PUSD.

30.     Defendant Percy McGee conducts business at 1333 North California Blvd, Suite

130/700, Walnut Creek, CA 94596, Contra Costa county.  McGee is a Financial Advisor for Merrill

Lynch and is also a member of the PUSD Board of Trustees.

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

# FACTS

## Galli's Career and Background

27.　On September 11, 2001, PUSD hired Galli.  Galli served as the Assistant Principal of Pittsburgh High School from 2001-2002, the Principal of Central Junior High School from 2002-2004, and the Principal of Pittsburg High School from 2004-2007.  On March 29, 2008, following a long leave of absence due to medical complications, PUSD placed Galli in the position of Director of New Construction and Career Technical Education.  In or around June of 2008, PUSD placed Galli in the position of Director of New Construction, Maintenance, Operations, Facilities, Grounds, Technology, and Career Technical Education.

28.　In that position, Galli was responsible for attending contractor meetings, overseeing the purchase of new furniture and technological equipment, coordinating design of classrooms, coordinating Career Technical Education oversight meetings, serving as the point of contact with the public regarding new construction in PUSD, overseeing updates to PUSD construction standards, overseeing dozens of grounds and maintenance crew, organizing small bid packages for repair work, representing PUSD in negotiation meetings with contractors, subcontractors, and the district on change orders and budgets, exercising final walk through signing authority on renovations and new construction, and organizing the PUSD Board Facilities Subcommittee, among other similar tasks.  Galli reported directly to Bonnett and his second-line supervisor was Wilson.

29.　Galli is a Certified Administrator with some thirty-two (32) years of experience working in California's educational system.  Throughout that time, he worked without incident or reprimand.  In fact, Galli was commended for his performance on various occasions, including being named Administrator of the Year several years ago.  Galli always received positive performance reviews and has no prior history of counseling or reprimands.

---

**FIRST AMENDED COMPLAINT**

CASE NO. **3:09-cv-03775-JSW**

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

### Galli Uncovers and Reports Financial Improprieties

30.     Almost immediately after he commenced working in his new position as Director of New Construction and Career Technical Education, and continuing when he assumed responsibility over Maintenance, Operations, Facilities, Grounds, and Technology, Galli became aware of certain budgetary practices that he found both questionable and concerning.

31.     Galli began to raise concerns about those practices beginning in or around May of 2008. At that time, he expressed concern to Bonnett, orally and in writing, about what he believed may be PUSD's improper allocation of deferred maintenance funding for the adult education roofing renovation project which was slated to take place. Bonnett was non-responsive.

32.     Beginning in or around September of 2008, deeply troubled by the possible PUSD financial improprieties he had uncovered, Galli began to inquire more aggressively into and express his concerns, both verbally and in writing, to Bonnett. Galli's concerns included, among others:

i.      The possible improper use of deferred maintenance funding;

ii.     The possible improper encroachment by the adult education program into the general fund;

iii.    The possible encroachment into the ADA funding stream for K-12;

iv.     The apparent failure of the Adult Education Program to pay operational costs in water and electrical in addition failing to contribute for maintenance, grounds, and technology services; and

v.      Violations committed during the modernization of the Boy's and Girl's Club.

33.     In approximately early September of 2008, upset with Wilson's public statements about PUSD's purchase and modernization of a building owned by the Boy's and Girl's Club, Galli communicated his concerns to Wilson, McGee, and Arenivar via email.

---

**FIRST AMENDED COMPLAINT**

CASE NO. **3:09-cv-03775-JSW**

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

34.     Wilson had publicly maintained that the building purchased from the Boy's and Girl's Club had no outstanding debts.  However, from Galli's exposure to the documents regarding the sale of the Club, he knew that not to be true and sent all three individuals a copy of a $650K note held by the Seeno Family and an amortization schedule to refute Wilson's contention.

35.     Galli sent this information because he was concerned that the District was moving forward with renovations and work on the Club, despite the fact that there may have been unresolved titling issues on the property.  Further, Galli was aware that the building was worth more than the sale price, and he discovered that the State of California had issued a grant that required permission from the State before any sale of the property.

36.     To Galli's knowledge, PUSD did not request such permission before initiating transfer of the property.  If this requirement was not complied with, Galli learned from reviewing the grant document that the Sate could then ask for the amount of the grant returned in the proceeds from the sale.

37.     Galli communicated these concerns to Wilson directly and to McGee and Arenviar because he did not trust Wilson or Bonnett to act in response to his concerns, as he believed them to be responsible for these improprieties.

38.     Galli knew that the Board of Trustees has oversight responsibilities over the allocation of all PUSD resources and must approve any expenditure over $10,000 in value.  He believed that members of the Board of Trustees would be concerned about and have a responsibility for rectifying any financial errors, oversights, or improprieties committed by PUSD administration.

39.     Also in September of 2008, Galli became aware of and concerned that PUSD contractor, RGM Construction Management Group, had been issued a $3.3 million contract for the

---

**FIRST AMENDED COMPLAINT**

construction of a new high school in the district without going through a public open bid process. Additionally, the District failed to avail itself of the public bid process.

40.     From Galli's understanding of the California Code, he believed that a public bidding processing was required prior to hiring contractors for such jobs. Again, he expressed his concerns directly to McGee and Arenivar. Galli also questioned why RGM was allowed to bill to the contract seven (7) employees for the new construction project when similar projects in the area used only two (2) to three (3) employees.

41.     McGee and Arenivar responded via e-mail that they would investigate Galli's concerns. Galli never heard what became of Arenivar and McGee's investigation.

**Galli Uncovered and Reported That The Financial Improprieties Violated the California Education Code**

42.     In late September of 2008, Galli inquired with Wilson and Bonnett about why PUSD had allowed the adult education program to intrude on the general fund over the past decade in what Galli believed to be a violation of the California Code. Galli maintained that PUSD is given authority to seize surplus funds accumulated in adult education to offset costs in other areas.

43.     In or around September of 2008, the PUSD adult education program announced a $2.2 million surplus. Galli believed that this surplus was incurred by the adult education program by intruding on the PUSD general fund after failing to pay for its own water, electrical and maintenance fees, among others.

44.     Galli communicated to Wilson and Bonnett that he believed the remaining balance due to be reimbursed to the general fund totaled approximately $106,000 more than what Wilson stated publicly.

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

FIRST AMENDED COMPLAINT

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

45.     When both Wilson and Bonnett failed to respond to Galli's inquiries and concerns, he consulted with counsel for PUSD regarding these issues and asked for a legal opinion, which he later received.

46.     In or around late November of 2008, Galli e-mailed to Bonnett the legal opinion prepared along with another written explanation of his concerns regarding the allocation of resources between the adult educational fund and the general fund.  Bonnett did not respond in writing.

47.     On November 26, 2008, Galli e-mailed Arenivar and McGee with these same concerns and forwarded the legal opinion.

48.     After Bonnett's continued silence, Galli raised his concerns with Bonnett again verbally, referencing the legal opinion.  At that time, Bonnett requested that Galli research the California Code himself - Bonnett was not willing to accept the attorney's opinion because Bonnett told Galli that he "did not trust attorneys."

49.     Galli did conduct his own independent research into the California Educational Code.  He combined this research with the legal opinion and drafted a new document to send to Bonnett outlining his specific concerns about PUSD administration handling of the District's finances.

50.     In or about early December of 2008, Galli submitted to Bonnett a memorandum entitled "California Education Code Research, Attorney Opinion, California Schools Accounting Manual, Prepared by Tim J. Galli" stating in part:

> The contention of this office is that the adult school program has for at least a decade operated outside the provisions of the California Education Code.  The Adult School Program has built its program on the backs of our K-12 students and staff.  PUSD has

allowed and been partner to the following code violations: 1. improper use of deferred maintenance funding; 2. encroachment by Adult Education into the General Fund; 3. encroachment into the ADA funding stream for K-12; 4. failure to pay operational costs in water and electrical in addition to failing to contribute for maintenance, grounds, and technology services; 5. anticipated violations in the proper modernization of the Boy's and Girl's Club.

51. After submitting this Memorandum to Bonnett Galli requested that Bonnett meet with him to discuss it further on at least four (4) occasions. Bonnett never responded to these requests.

52. Galli grew increasingly frustrated that his complaints and concerns were not being taken seriously. Acting out of concern for the school system and the students in the District who he believed were being slighted by PUSD's mishandling of funds, Galli circulated his Memorandum to McGee and Arenivar.

53. McGee and Arenivar responded verbally and via e-mail to the Memorandum, asking numerous questions about the implications of Galli's research and inquiring how Galli believed the problems could be resolved. Both McGee and Arenivar assured Galli that they would investigate these concerns. To date, Galli is not aware if either of these Board members investigated the allegations or shared them with the rest of the Board of Trustees.

54. When Galli heard nothing from McGee or Arenivar in response to his concerns, Galli scheduled a meeting in or around mid January of 2009 with PUSD Board of Trustees President Ruben Rosales. During the meeting with Rosales, Galli provided Rosales with a copy of the Memorandum drafted for Bonnett. At that time, Rosales listened to Galli's concerns, reviewed the Memorandum, and told Galli that he was growing increasingly concerned that he had not been

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

FIRST AMENDED COMPLAINT

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

1   receiving accurate information regarding expenditures from PUSD administrators Wilson and

2   Bonnett.

3       55.    Further, Rosales told Galli that he would raise the concerns expressed in the

4   Memorandum to the PUSD Board of Trustees.  Galli does not know if this ever occurred.

5       56.    On or about February 9, 2009 Galli e-mailed another Memorandum to Board of

6   Trustees members McGee, Arenivar, and Rosales attaching additional clarification regarding the

7   Adult Education financial practices.  That memo was entitled  "Adult Education and the Intrusion

8   on the General Fund," and stated Galli's concerns about the adult education program expenditures

9   and failure to cover costs, ADA fund usage, and deferred maintenance spending on the Adult

10  Education re-roofing project, among others.

11      57.    Also in or around late January or early February of 2009, Galli e-mailed McGee and

12  Arenivar informing them that the figures announced by Wilson for the offset funding schedule for

13  adult education to contribute to the general fund for operating costs were inaccurate.  Galli

14  maintained that Wilson understated the amount to PUSD administration and Board of Trustee

15  members by approximately $100,000.  To Galli's knowledge, no action was taken in response to

16  this concern.

17      58.    In or around late February of 2009, Galli reiterated once again to Bonnett via e-mail

18  and verbally his concern about the Boy's and Girl's Club purchase and renovation of the roof in

19  light of the Seeno note on the property and decrying the fact that the District failed to do due

20  diligence in discovering these potential financial obligations.  Bonnett did not respond.

21      59.    On or about March 3, 2009, Galli emailed Wilson, copying McGee and Arenivar,

22  clarifying a public statement Wilson made regarding the transferring of title for the Boy's and Girl's

23  Club.  Galli wrote this e-mail out of concern that the District, through Wilson, had violated state

FIRST AMENDED COMPLAINT

grant requirements when it transferred title on the property without the prior written permission of the State, making the District vulnerable financially.

60.     Wilson responded almost immediately via e-mail, stating angrily "why are you doing this? Why are you asking these questions?" Galli then responded to Wilson via e-mail that he believed it to be his job as a civil servant to denounce wrongdoing when he identified it and that Galli was concerned that PUSD was going to commence work on a property for which it did not properly hold title.

**PUSD places Galli on Administrative Leave**

61.     <u>Only hours later on that very same day</u>, PUSD placed Galli on paid administrative leave due to allegations of misconduct. The administrative leave was immediate and PUSD immediately denied Galli access to his office, files, and e-mails. Galli has not had access to those files or e-mails since that date.

62.     On or around March 8, 2009, PUSD contacted Galli via Bonnett's Administrative Assistant, Brenda Herring, and verbally informed him of a March 9, 2009 "hearing" that was slated to be held the very next day and over which Bonnett would preside, to review the allegations of misconduct against Galli.

63.     Galli was never given a written notice of the charges against him and he was never provided with written notification of the hearing, who would be present, or what his rights were during that hearing.

64.     On or around March 9, 2009, Galli attended the PUSD hearing along with friend and retired attorney, Al Affinito, at the Board meeting room. Also present at the hearing were Bonnett, Herring, and Assistant Superintendant of Personnel Jim Schiffman. At that time, Galli was told

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

1  verbally for the first time that he was being charged with the offense of urinating on an employee's

2  car in December of 2008 when students were within 50 yards of the car.

3      65.    Galli acknowledged that the incident in question did occur, in a discrete fashion, but

4  happened in August of 2008 and without students present.

5

6      66.    In or around August of 2008, Galli informed both Eric Peyko, Principal of Rancho

7  Modonez school and Mitch McAllister, owner of California Designs West, that he had urinated on

8  RGM contractor Gino Elliot's car.  These individuals will attest that the event happened in August

9  of 2008 and not in December of 2008 as PUSD contends.

10

11      67.    Galli heard nothing about the incident from when it happened in August of 2008

12  through March of 2009, even though Elliot and Galli's Assistant Director, Michael Rodriguez, were

13  present when the incident occurred.  In fact, Rodriguez stated in testimony that when he spoke to

14  Elliot about the event, Elliot was more worried about any negative impact Galli's actions could

15  have on Galli himself.  Rodriguez also stated, again, in testimony, that he was primarily concerned

16  about how Galli's conduct could affect Galli.  At no time had anyone expressed any upset, offense

17  or other concerns to Galli or anyone else employed by PUSD.

18

19      68.    During the March 9, 2009 hearing, Schiffman and Bonnett informed Galli that

20  PUSD was in possession of written statements by Elliot and Rodriguez regarding the urination

21  incident.  PUSD never provided Galli with copies of these statements and Bonnett and Schiffman

22  refused to tell him who filed the charge against him.

23

24      69.    Rodriguez testified that he never reported the incident, and that when he spoke with

25  Elliot after the event, Elliot also did not plan to pursue the matter because it was a "dead subject".

26      70.    At the close of the hearing, Bonnett told Galli that he would submit a report with

27  recommendations to the Board of Trustees, for its consideration in a March 11, 2009 closed session.

28

---

**FIRST AMENDED COMPLAINT**

CASE NO. **3:09-cv-03775-JSW**

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

1   Galli was also told he would receive notes from the hearing, but was never provided with any

2   documentation from that hearing.

3         71.     On approximately March 11, 2009, the PUSD Board of Trustees held a closed

4   session in which they discussed the allegations against Galli.  On or around March 12, 2009, an

5   outside investigator commenced an investigation into additional charges against Galli of sexual

6   harassment and a hostile work environment.

7

8         72.     PUSD never informed Galli of these charges against him.  PUSD never provided

9   Galli with the names of the complainants or content of such allegations, and informed him directly

10  that these allegations were made against him.  PUSD also never provided Galli with written or

11  verbal notification of these allegations.

12

13        73.     On or about March 24, 2009 Galli e-mailed McGee requesting the hearing report and

14  further information about the purported allegations of sexual harassment and/or hostile work

15  environment against him.  Arenivar informally told Galli that ultimately no one ever formally made

16  any charge of sexual harassment and/or hostile work environment against Galli.

17

18        74.     On approximately March 24, 2009, McGee responded via e-mail, saying neither he

19  nor any other Board member received documentation regarding the allegations or the initial charge

20  and "I do not know what the next step is but, like I told them this stinks to high Heaven!"

21        75.     On approximately March 25, 2009, PUSD called Galli and told him that he had been

22  scheduled to meet with the outside investigator the following day, on March 26, 2009.

23

24        76.     On or about March 26, 2009, Galli, accompanied by Affinito, went to the meeting

25  with the investigator.  The investigator repeatedly refused to tell Galli and Affinito what charges

26  were actually pressed and by whom, only to later relent and state that Wilson had pressed the

27

28

---

**FIRST AMENDED COMPLAINT**

CASE NO. 3:09-cv-03775-JSW

charges. The investigator also refused to inform Galli about the nature or content of the charges against him.

77.    On approximately March 29, 2009, Arenivar called Galli, as a friend, and told him informally that following the investigation, the Board had decided that it was not going to pursue the sexual harassment/hostile work environment allegations against Galli, but would continue to pursue the urination allegation.

78.    Arenivar reported to Galli that he believed that all of this was happening because of the issues Galli raised about alleged improprieties committed by PUSD administrators.

79.    On or about April 8, 2009, Arenivar called Galli and told him informally that it looked like Galli was going to be fired. However, the Board took no action and Galli remained on administrative leave with pay.

80.    On approximately April 24, 2009, counsel for PUSD contacted Galli and requested a meeting to discuss his pending disciplinary action.

81.    On or around May 7, 2009, Wilson issued a written notification to Galli that on Wednesday, May 13, 2009, the Board of Trustees would consider the specific charges against him and discuss potential disciplinary action in a closed session meeting.

82.    On approximately May 14, 2009, Galli received the Notice of Intent to Immediately Suspend and Dismiss, and was placed on leave without pay, effectively causing his constructive discharge.

**Galli Uncovers a Financial Conflict of Interest Between McGee and Wilson**

83.    Galli also discovered what he believed to be a conflict of interest in violation of California Law.

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

84. On or about September 10, 2008, McGee, in his role as an employee of Merrill Lynch, attempted to recruit Galli as a financial client. Galli rejected this offer because of the obvious conflict of interest. At that same meeting, McGee revealed intimate knowledge of Wilson's financial status, leading Galli to believe that McGee was the financial manager for Wilson.

85. Under the regulations covering conflict of interest, over a period of several months, Galli continued to question the appropriateness of the financial relationship between McGee and Wilson and began to press Board members to question McGee as to his financial status with her, which led to their financial relationship being verified before the Board in closed session.

86. However, this business relationship was not disclosed to the public. Instead, the business relationship between McGee and Wilson was verified as a conflict of interest internally on the very day before the PUSD Board voted to recommend Galli's termination.

87. The Board was aware of the conflict of interest between Wilson, who brought the charges against Galli, and McGee, who voted on those charges, at the time that the Board voted to recommend Galli's termination on or about May 13, 2009.

88. Further, a search of the District's records indicates that neither McGee nor Wilson disclosed this financial relationship as is required under California Law (form 700).

**PUSD Brings Supplemental Charges Against Galli**

89. On or about June 24, 2009, PUSD served the Supplemental Notice of Intent to Immediately Suspend and Dismiss, to Galli. That Supplemental Notice contained additional charges of immoral conduct stemming from an alleged threatening e-mail sent by Galli and additional e-mails sent by Galli which PUSD characterized as sexually inappropriate.

90. Galli never received notice of these additional charges prior to the Supplemental

FIRST AMENDED COMPLAINT

CASE NO. 3:09-cv-03775-JSW

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

1   Notice, was never contacted regarding an investigation into the charges, is unaware if an

2   investigation was ever initiated, and was never given the opportunity to respond to these charges.

3   Additionally, Galli disputes whether the Board actually ever voted on these supplemental charges.

4         91.     Francine Broughton, who worked with Galli in the maintenance department,

5   stated in testimony that she was never offended by any e-mails or communications from Galli nor

6   

7   did she ever feel sexually harassed or intimidated by him.

8         92.     The only intimidation that Broughton felt was, in fact, brought upon by the

9   District.  Broughton testified that Schiffman approached her the day before she was supposed to

10  meet with a detective regarding the investigation into Galli.  Broughton testified that Schiffman told

11  

12  her to make sure she told the detective there was a hostile work environment.  Broughton did not, in

13  fact, tell this to the detective because her work environment was not hostile.

14        93.     This effort by the District to compel testimony of a hostile work environment

15  where none exists is further evidence of pretext.

16        94.     On July 21, 2009, Galli received the  Supplemental Accusation and Statement of

17  Charges from PUSD, which contained the unsubstantiated additional charges outlined above.

18  

19        95.     On or about August 6, 2009, PUSD dismissed the charges against Galli and the

20  hearing process pursuant to Cal. Ed. Code § 44944 *et seq.* ended.

21  

22        96.     Having been placed on "leave without pay", tantamount to termination and, at a

23  minimum, constructive discharge, Galli was forced to take early retirement because he could not

24  afford to support his family and was on the verge of losing his home.  Galli continues to search for

25  work and will un-retire at the earliest opportunity.  However, with charges of "dishonesty" and

26  "immorality" having been brought by PUSD, obtaining work in the current economic climate has

27  proven to be very difficult.

28  

---

**FIRST AMENDED COMPLAINT**

CASE NO. 3:09-cv-03775-JSW

97.     Galli has thus been effectively terminated and/or constructively discharged in retaliation for his whistleblowing activities described herein.

## FIRST CAUSE OF ACTION

### (California Whistleblower Protection Act, Ca. Gov. Code, § 8547 *et seq.*)

### (Against all Defendants)

98.     The allegations of the preceding paragraphs are realleged as if fully set forth below.

99.     The California Whistleblower Protection Act, Ca. Gov. Code, § 8547 *et seq.*, was enacted to protect the right of state employees "to report waste, fraud, abuse of authority, violation of law, or threat to public health without fear of retribution." *Id.* § 8547.1.

100.    Galli, as an employee of a state agency, is covered under the Act. *See, e.g.* Cal. Gov. Code § 8547.2(a), Cal Gov. Code § 11000(a), *Town of Atherton v. Superior Court In and For San Mateo County,* 159 Cal.App.2d 417, 324 P.2d 328 (1958) (quoting *Hall v. City of Taft,* 47 Cal.2d 177, 302 P.2d 574) ('School districts are agencies of the state for the local operation of the state school system…').

101.    Galli made numerous protected disclosures when he informed Bonnett, Wilson, and members of the PUSD Board of Trustees of PUSD's violations of California law with respect to the allocation of resources between the general fund and the adult education fund; the improper use of deferred maintenance funding; the improper encroachment into the ADA funding stream for K-12; the failure of the adult education program to pay operational costs in water and electrical in addition failing to contribute for maintenance, grounds, and technology services; and violations of California state grant requirements committed during the modernization of a building purchased from the Boy's and Girl's Club.

102.    Galli made further disclosures regarding the financial conflict of interest between

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

FIRST AMENDED COMPLAINT

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

McGee and Wilson.

103.    All of these actions constitute violations of state law and/or conduct that is economically wasteful or comprises gross mismanagement or incompetency.

104.    Defendants knew of Galli's protected activity because Galli continuously informed them of his investigations.  Galli prepared memorandums and even sought the advice of the School Board's counsel, all the while informing Defendants of his findings.

105.    Defendants engaged in a cover-up effort to hide their retaliation by dredging up an incident that was months old, undergoing an unconstitutional investigation, and ultimately voting to recommend that PUSD terminate Galli without just cause and without following even the most basic due process requirements.

106.    PUSD and Wilson then supplemented the initial charges with additional alleged immoral conduct of which Galli was not informed, which was not investigated, and for which the question of whether an actual vote by the Board was taken is contested.

107.    Further, McGee voted on the charges against Galli which Wilson, with whom McGee had a proven financial relationship, brought to the Board.

108.    The real reason for the suspension and vote to recommend termination was Galli's whistleblowing activities, and the purported reasons were a mere pretext.

109.    PUSD and Wilson placed Galli on administrative leave only hours after sending his most recent communication to Wilson about his concerns regarding the Boy's and Girl's Club purchase and modernization.  Wilson responded angrily to that e-mail asking why Galli was pressing her.

110.    Galli's placement on administrative leave was followed by biased votes to recommend his termination, which resulted in his placement on leave without pay.  This chain of

**FIRST AMENDED COMPLAINT**

CASE NO. 3:09-cv-03775-JSW

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

1  adverse actions forced Galli to choose between being unable to pay his bills or taking early

2  retirement.

3      111.    Thus, Defendants constructively discharged/and or effectively terminated Galli in

4  violation of the California Whistleblower Protection Act.

### SECOND CAUSE OF ACTION

**(Reporting by School Employees of Improper Governmental Activities Act, Ca. Ed. Code, §**

**44110 *et seq*.)**

**(Against all Defendants)**

10     112.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

11     113.    The Reporting by School Employees of Improper Governmental Activities Act, Ca.

13  Ed. Code, § 44110 *et seq*., was enacted to protect the right of school employees to disclose

14  improper governmental activities. *Id.* § 44111.

15     114.    Improper governmental Activity "means an activity by a public school agency or by

16  an employee that is undertaken in the performance of the employee's official duties, whether or not

17  that activity is within the scope of his or her employment, and that meets either one of the following

18  descriptions: (1) The activity violates a state or federal law or regulation, including, but not limited

20  to, corruption, malfeasance, bribery, theft of government property, fraudulent claims, fraud,

21  coercion, conversion, malicious prosecution, misuse of government property, or willful omission to

23  perform duty.  (2) The activity is economically wasteful or involves gross misconduct,

24  incompetency, or inefficiency." *Id.* § 44112.

25     115.    Galli, as a school employee, is covered under the Act.  *See Id.* § 44112, *See also* Ca.

26  Gov. Code § 3540.1 (j).

27     116.    Galli made numerous protected disclosures when he informed Bonnett, Wilson, and

**FIRST AMENDED COMPLAINT**

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

members of the PUSD Board of Trustees of PUSD's violations of California law with respect to the allocation of resources between the general fund and the adult education fund; the improper use of deferred maintenance funding; the improper encroachment into the ADA funding stream for K-12; the failure of the adult education program to pay operational costs in water and electrical in addition failing to contribute for maintenance, grounds, and technology services; and violations of California state grant requirements committed during the modernization of a building purchased from the Boy's and Girl's Club.

117.    Galli made further disclosures regarding the financial conflict of interest between McGee and Wilson.

118.    All of these actions constitute violations of state law and/or conduct that is economically wasteful or comprises gross mismanagement or incompetency.

119.    Defendants knew of Galli's protected activity because Galli continuously informed them of his investigations.  Galli prepared memorandums and even sought the advice of the School Board's counsel, all the while informing Defendants of his findings.

120.    Defendants engaged in a cover-up effort to hide their retaliation by dredging up an incident that was months old, undergoing an unconstitutional investigation, and ultimately voting to recommend that PUSD terminate Galli without just cause and without following even the most basic due process requirements.

121.    PUSD and Wilson then supplemented the initial charges with additional alleged immoral conduct of which Galli was not informed, which was not investigated, and for which the question of whether an actual vote by the Board was taken is contested.

122.    Further, McGee voted on the charges against Galli which Wilson, with whom McGee had a proven financial relationship, brought to the Board.

---

**FIRST AMENDED COMPLAINT**

123. The real reason for the recommended termination was Galli's whistleblowing activities, and the purported reasons were a mere pretext.

124. PUSD and Wilson placed Galli on administrative leave only hours after sending his most recent communication to Wilson about his concerns regarding the Boy's and Girl's Club purchase and modernization. Wilson responded angrily to that e-mail asking why Galli was pressing her.

125. Galli's placement on administrative leave was followed by biased votes to recommend his termination, which resulted in his placement on leave without pay. This chain of adverse actions forced Galli to choose between being unable to pay his bills or taking early retirement.

126. Thus, Defendants constructively discharged/and or effectively terminated Galli in violation of the Reporting by School Employees of Improper Governmental Activities Act.

## THIRD CAUSE OF ACTION

### (Deprivation of First Amendment Freedom of Speech, 42 U.S.C. §1983)

### (Against all Defendants)

89. The allegations of the preceding paragraphs are realleged as if fully set forth below.

90. 42 U.S.C. §1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

91. Defendants acted under color of state law when they deprived Galli of his First

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

Amendment Freedom of Speech. *See Levine v. City of Alameda*, 525 F.3d 903, 905 (9th Cir. 2009) (citing *Lopez v. Dept. of Health Servs.,* 939 F.2d 881, 883 (9th Cir. 1991)).

92.     Defendants retaliated against Galli for his disclosures by effectively terminating/constructively discharging him, at least in part, because (1) he spoke on a matter of public concern; (2) he spoke as a private citizen, not just a public employee [and] (3) his protected speech was a substantial or motivating factor in PUSD's effective termination of him. *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009) (citing *Eng v. Cooley,* 552 F.3d 1062, 1070 (9th Cir. 2009) (internal citations omitted).

93.     PUSD has thus violated Galli's First Amendment Freedom of Speech.

## FOURTH CAUSE OF ACTION

### (Deprivation of Fourteenth Amendment Due Process, 42 U.S.C. §1983.)

### (Against PUSD)

94.     The allegations of the preceding paragraphs are realleged as if fully set forth below.

95.     Violations of procedural due process may also be redressed under a §1983 claim. *See, e.g., Kreutzer v. County of San Diego*, 153 Cal. App. 3d 62, 72, 200 Cal. Rptr. 322 (Cal. Ct. App. 1984), *citing Carey v. Piphus*, 435 U.S. 247 (1978).

96.     Galli's procedural due process rights were violated because PUSD interfered with a liberty/property interest and the procedures attendant upon that deprivation were not sufficient. *See, e.g. Humphries v. County of Los Angeles*, 554 F.3d 1170 (9th Cir.) (*citing Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

97.     Galli, as a public employee, has a property interest in employment and must be afforded preremoval due process rights. *See, e.g. Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct.

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

2701, 33 L.Ed.2d 548, *Kempland v. Regents of University of California*, 155 Cal.App.3d 644, 202

Cal. Rptr. 275 Cal.App. 4 Dist. (1984) (citing *Skelly v. State Personnel Bd.,* 15 Cal.3d 194, 124

Cal.Rptr. 14, 539 P.2d 774)).

98.     Galli was entitled to "notice of the proposed action, the reasons therefore, a copy

of the charges and materials upon which the action is based, and the right to respond, either orally

or in writing, to the authority initially imposing discipline." *Skelly v. State Personnel Bd.,* 15

Cal.3d 194, 124 Cal.Rptr. 14, 539 P.2d 774)).

99.     PUSD did not provide Galli with the procedural due process rights he was entitled

to as set forth above.

100.     PUSD further deprived Galli of his procedural due process rights because the

proceedings under which PUSD subjected Galli were biased. *Marable v. Nitchman,* 511 F.3d 924

(9th Cir. 2007).

101.     PUSD has thus failed to provide Galli with adequate procedural due process

protections by failing to provide him with the minimum of notice and response opportunities.

102.     Further, Galli was entitled to have the charges against him voted on by an

impartial Board. *See, e.g. Gai v. City of Selma*, 79 Cal. Rptr. 2d 910, 913 (Cal. Ct. App. 1998),

*Wong Yang Sung v. McGrath*, 70 S. Ct. 445 (1950).

103.     PUSD subjected Galli to an unconstitutional proceeding because McGee voted on

Galli's termination recommendation even though he was biased against Galli by his pecuniary

relationship with Wilson, who brought the charges against Galli. *See, e.g. Burrell v. City of Los

Angeles*, 209 Cal. App. 3d 568, 582 (Cal. Ct. App. 1989), *Caperton v. A.T. Massey Coal Co.,* 129 S.

Ct. 2252 (2009), *Ward v. Village of Monroeville*, 93 S. Ct. 80 (1972), *Tumey v. Ohio*, 47 S. Ct. 437

(1927), *American Motors Sales Corp. v. New Motor Vehicle Bd.*, 138 Cal. Rptr. 594 (Cal. Ct. App.

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

**FIRST AMENDED COMPLAINT**

1977).

## FIFTH CAUSE OF ACTION

### (Deprivation of Fourteenth Amendment Due Process, 42 U.S.C. §1983 for

### Declaratory/Injunctive Relief)

### (Against Barbara Wilson in her Individual and Official Capacity)

104.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

105.    Violations of procedural due process may also be redressed under a §1983 claim. *See, e.g., Kreutzer v. County of San Diego*, 153 Cal. App. 3d 62, 72, 200 Cal. Rptr. 322 (Cal. Ct. App. 1984), *citing Carey v. Piphus*, 435 U.S. 247 (1978).

106.    §1983 "permits plaintiffs to maintain their claim against the named state officials official capacity insofar as it seeks prospective injunctive relief," and the "Eleventh Amendment, moreover, does not bar this aspect of plaintiff['s] §1983 claim." *See Emma C. v. Eastin*, 985 F. Supp. 940, 947 (N. D. Cal. 1997), *citing Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989), *Idaho v. Coeur d'Alene*, 521 U.S. 261, *291-293, see also Ex parte Young*, 209 U.S. 123 (1908), *Harper ex rel. Harper v. Poway Unified School Dist.,* 345 F. Supp. 2d 1096, 1116 (S. D. Cal. 2004), *quoting Chaloux v. Killeen,* 886 F.2d 247, 252 (9th Cir.1989).

107.    A plaintiff can also pursue a §1983 claim against "named state officials in their *individual* capacities for both retrospective and prospective relief." *See Emma C. v. Eastin*, 985 F. Supp. 940, 947 (N. D. Cal. 1997), *citing Hafer v. Melo*, 502 U.S. 21, 31 (1991), *Pena v. Gardner,* 976 F. 2d 469, 472-73 (9th Cir. 1992), *see also Doe By and Through Doe v. Petaluma City School Dist.*, 830 F. Supp. 1560, 1577-78 (N.D. Cal. 1993), *Wasson v. Sonoma County Jr. College Dist.,* 4 F. Supp. 2d 893, 902, *citing Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974), *Ashker v. California*

**FIRST AMENDED COMPLAINT**

CASE NO. 3:09-cv-03775-JSW

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

*Dept. of Corrections*, 112 F.3d 392, 294 (9th Cir. 1997). "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."" *Hafer*, 502 U.S. at 25, *quoting Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "[S]tate officials, sued in their individual capacities, are "persons" within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the "official" nature of their acts." *Id.* at 31.

108.     Galli's procedural due process rights were violated because Barbara Wilson interfered with a liberty/property interest when she recommended Galli's termination, and the procedures attendant upon that deprivation were not sufficient. *See, e.g. Humphries v. County of Los Angeles*, 554 F.3d 1170 (9th Cir.) (citing *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

109.     Wilson further deprived Galli of his procedural due process rights because the proceedings under which Defendants subjected Galli were biased. *Marable v. Nitchman* 511 F.3d 924 (9th Cir. 2007).

110.     Wilson has thus failed to provide Galli with adequate procedural due process protections by failing to provide him with the minimum of notice and response opportunities.

## SIXTH CAUSE OF ACTION

### (Deprivation of Fourteenth Amendment Due Process, 42 U.S.C. §1983 for

### Declaratory/Injunctive Relief)

### (Against Percy McGee in his Individual and Official Capacity)

111.     The allegations of the preceding paragraphs are realleged as if fully set forth

**FIRST AMENDED COMPLAINT**

below.

112.     Violations of procedural due process may also be redressed under a §1983 claim. *See, e.g., Kreutzer v. County of San Diego*, 153 Cal. App. 3d 62, 72, 200 Cal. Rptr. 322 (Cal. Ct. App. 1984), *citing Carey v. Piphus*, 435 U.S. 247 (1978).

113.     §1983 "permits plaintiffs to maintain their claim against the named state officials official capacity insofar as it seeks prospective injunctive relief," and the "Eleventh Amendment, moreover, does not bar this aspect of plaintiff['s] §1983 claim." *See Emma C. v. Eastin*, 985 F. Supp. 940, 947 (N. D. Cal. 1997), *citing Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989), *Idaho v. Coeur d'Alene*, 521 U.S. 261, *291-293, see also Ex parte Young*, 209 U.S. 123 (1908), *Harper ex rel. Harper v. Poway Unified School Dist.,* 345 F. Supp. 2d 1096, 1116 (S. D. Cal. 2004), *quoting Chaloux v. Killeen,* 886 F.2d 247, 252 (9th Cir.1989).

114.     A plaintiff can also pursue a §1983 claim against "named state officials in their *individual* capacities for both retrospective and prospective relief." *See Emma C. v. Eastin*, 985 F. Supp. 940, 947 (N. D. Cal. 1997), *citing Hafer v. Melo*, 502 U.S. 21, 31 (1991), *Pena v. Gardner*, 976 F. 2d 469, 472-73 (9th Cir. 1992), *see also Doe By and Through Doe v. Petaluma City School Dist.*, 830 F. Supp. 1560, 1577-78 (N.D. Cal. 1993), *Wasson v. Sonoma County Jr. College Dist.,* 4 F. Supp. 2d 893, 902, *citing Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974), *Ashker v. California Dept. of Corrections*, 112 F.3d 392, 294 (9th Cir. 1997). "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.'" *Hafer*, 502 U.S. at 25, *quoting Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "[S]tate officials, sued in their individual capacities, are "persons" within the meaning of § 1983. The Eleventh Amendment does

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

**FIRST AMENDED COMPLAINT**

CASE NO. 3:09-cv-03775-JSW

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
Ph: 202.331.2883 • Fax: 202.261.2835

1  not bar such suits, nor are state officers absolutely immune from personal liability under § 1983

2  solely by virtue of the "official" nature of their acts." *Id.* at 31.

3    115.    Galli's procedural due process rights were violated because Percy McGee

4  interfered with a liberty/property interest when he cast a biased vote in the matter of Galli's

5  suspension and termination recommendation, and the procedures attendant upon that deprivation

6  were not sufficient. *See, e.g. Humphries v. County of Los Angeles*, 554 F.3d 1170 (9th Cir.) (citing

7

8  *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

9    116.    McGee further deprived Galli of his procedural due process rights because the

10 proceedings under which Defendants subjected Galli were biased. *Marable v. Nitchman* 511 F.3d

11

12 924 (9th Cir. 2007).

13   117.    McGee has thus failed to provide Galli with adequate procedural due process

14 protections by failing to provide him with the minimum of notice and response opportunities.

15                              **PRAYER FOR RELIEF**

16         Based on the foregoing discrimination, Galli respectfully requests that he be awarded

17 the following relief:

18

19     i.    Economic damages for lost wages and benefits;

20     ii.   Compensatory (non-economic) damages, including damages for emotional distress

21

22 and loss of reputation;

23     iii.  Non-economic damages for mental and emotional distress, embarrassment and

24 humiliation, career damage, and harm to reputation;

25     iv.   Punitive damages to punish Defendants for malicious acts of retaliation and to deter

26 them from similar retaliatory conduct toward other employees;

27

28     v.    Injunctive or equitable relief, as may be appropriate, to prevent further harm to

---

**FIRST AMENDED COMPLAINT**

1    others and the public caused by Defendants retaliation against a whistleblower;

2          vi.      Injunctive or equitable relief, as may be appropriate, to enjoin Defendants from

3    further retaliation against Galli;

4          vii.     Reasonable litigation costs, expert fees and reasonable attorneys' fees, together with

5    all other relief available from law and equity.

6

7

8

9

10

11   Respectfully submitted,

12

13

14   _____
     DAVID SCHER, California Bar No. 184562
15   THE EMPLOYMENT LAW GROUP, P.C.
     888 17th Street, NW, Suite 900
16   Washington, D.C. 20006
     dscher@employmentlawgroup.net
17   (202) 261-2802
     (202) 261-2835 (facsimile)
18   *Counsel for Plaintiff Tim Galli*

19

20                          **Jury Demand**

21   Plaintiff demands a jury for all issues proper to be so tried.

22

23

24

25

26

27

28

---

**FIRST AMENDED COMPLAINT**

Case No. **3:09-cv-03775-JSW**

*The Employment Law Group, P.C.*
*888 17th Street, NW, Suite 900*
*Washington, D.C. 20006*
*Ph: 202.331.2883 • Fax: 202.261.2835*