**United States District Court**
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7

8            FOR THE NORTHERN DISTRICT OF CALIFORNIA

9    TIM GALLI,

10          Plaintiff,                          No. C 09-03775 JSW

11     v.

12   PITTSBURG UNIFIED SCHOOL DISTRICT,    **ORDER GRANTING IN PART**
     BARBARA WILSON and PERCY MCGEE,       **AND DENYING IN PART**
13                                          **DEFENDANTS' MOTION TO**
            Defendants.                     **DISMISS AND MOTION TO**
14   _____/     **STRIKE**

15

16          Now before the Court is the motion to dismiss and the motion to strike filed by

17   Defendants Pittsburg Unified School District (the "PUSD"), Barbara Wilson ("Wilson") and

18   Percy McGee ("McGee") (collectively, "Defendants"). These matters are now fully briefed and

19   ripe for decision. The Court finds that these matters are appropriate for disposition without oral

20   argument and these matters are deemed submitted. See N.D. Civ. L.R. 7-1(b). Accordingly, the

21   hearing set for December 11, 2009 is VACATED. Having carefully reviewed the parties'

22   papers and the relevant legal authority, the Court hereby grants in part and denies in part

23   Defendants' motion to dismiss and their motion to strike.

24                                **BACKGROUND**

25          In this action, Plaintiff Tim Galli ("Plaintiff") is suing Defendants for what he contends

26   was an improper constructive discharge. He alleges that he was constructively discharged in

27   retaliation for voicing his concern regarding financial improprieties and that he was denied due

28

1 process. Defendants move to dismiss all of Plaintiff's claims and move to strike Plaintiff's

2 requests for relief. The Court shall address additional facts as necessary to its analysis in the

3 remainder of this Order.

**ANALYSIS**

**A. Legal Standard Applicable to Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim upon which relief may be granted. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), a plaintiff must do more than recite the elements of the claim and must "provide the grounds of [its] entitlement to relief." *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955, 1959 (2007) (citations omitted). The pleading must not merely allege conduct that is conceivable. Rather, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

**1. Defendants Are Not Immune.**

Ordinarily, the Eleventh Amendment bars official-capacity suits against state officials such as Defendants. *See Kentucky v. Graham*, 472 U.S. 159, 169-70 (1985). However, a suit against state officials seeking prospective injunctive relief from unconstitutional state action is not barred. *See id.* at 167 n.14; *Ex parte Young*, 209 U.S. 123, 159-60 (1908). This principle generally is referred to as the *Ex parte Young* exception and is limited to prospective injunctive relief from continuing or impending state action which violates the federal constitution or a federal statute. *See Armstrong v. Wilson*, 124 F.3d 1019, 1026 (9th Cir. 1997).

*United States District Court*
For the Northern District of California

2

United States District Court
For the Northern District of California

1    Here, Plaintiff seeks reinstatement based on his alleged wrongful termination.  The

2  parties dispute whether reinstatement constitutes prospective or retrospective injunctive relief.

3  However, the Ninth Circuit has made clear that "reinstatement constitutes prospective

4  injunctive relief because a wrongful discharge is a continuing violation." *Flint v. Dennison*,

5  488 F.3d 816, 825 (9th Cir. 2007) (citing *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836,

6  841 (9th Cir. 1997)).  Because Plaintiff seeks prospective injunctive relief from Defendants to

7  remedy alleged constitutional violations, his suit is not barred by the Eleventh Amendment.

8    Moreover, to the extent Plaintiff sues Wilson and McGee in their individual capacities,

9  the Eleventh Amendment does not bar claims against them, including claims for damages or

10  retrospective injunctive relief.  "[T]he Eleventh Amendment provides no shield for a state

11  official confronted by a claim that he had deprived another of a federal right under the color of

12  state law." *Hafer v. Melo*, 502 U.S. 21, 30 (1991) (citation omitted).  To bring a claim against a

13  state official in their individual capacity, "it is enough to show that the official, acting under

14  color of state law, caused the deprivation of a federal right. *Id*. at 26 (citation omitted).

15  Defendants argue that Plaintiffs must allege facts that show Wilson and McGee acted

16  independently of PUSD's policies and protocols.  (Mot. at 9.)  However, the Supreme Court has

17  rejected this argument.  In *Hafer*, the plaintiff tried to distinguish between acts taken outside of

18  the official's authority or not essential to the operation of state government and acts withing the

19  official's authority and necessary to the performance of governmental functions. *Id* at 28.  The

20  Court held that the distinction urged by the plaintiff found no support in the broad language of §

21  1983 and that state officers are not "absolutely immune from personal liability under § 1983

22  solely by virtue of the 'official' nature of their acts." *Id*. at 28, 31; *see also McDade v. West*,

23  223 F.3d 1135, 1140(9th Cir. 2000) (acts by an officer are under "color of law" if they are

24  "performed while the officer is acting, purporting, or pretending to act in the performance of his

25  or her official duties").

26    Here, Plaintiff alleges that Wilson brought charges against him and that McGee voted

27  with the PUSD Board on those charges to terminate Plaintiff.  (Compl., ¶ 16, 86.)  Plaintiff

28  further alleges that when the Board voted to terminate his employment, they placed him on

3

1  leave without pay, which was constructive discharge and forced Plaintiff to take early

2  retirement.  (*Id*., ¶ 96.)  The Court finds such allegations, taken as true, are sufficient to

3  demonstrate that Wilson and McGee were personally involved in the deprivation of his federal

4  rights.

5  **2.   Plaintiff's First Amendment Claim.**

6  In order to state a claim against a government employer for violation of the First

7  Amendment, an employee bears the burden of demonstrating: "(1) whether the plaintiff spoke

8  on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public

9  employee; [and] (3) whether the plaintiff's protected speech was a substantial or motivating

10  factor in the adverse employment action."  *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009)

11  (quoting *Eng v. Cooley,* 552 F.3d 1062, 1070 (9th Cir.2009)).  A public employee's speech is

12  protected if it addresses "a matter of legitimate public concern."  *Id*. (quoting *Pickering v. Bd. of*

13  *Educ.*, 391 U.S. 563, 571 (1968).  If the employee meets this burden, the employer may prevail

14  by demonstrating either that: (a) under the balancing test established by *Pickering* that its

15  "legitimate administrative interests outweigh the employee's First Amendment rights;" or (b)

16  "under the mixed motive analysis established by *Mt. Healthy City Sch. Dist. Bd. of Educ. v.*

17  *Doyle,* 429 U.S. 274, 287 (1977), the employer would have reached the same decision even in

18  the absence of the employee's protected conduct."  *Roe v. City of San Diego,* 356 F.3d 1108,

19  1112, *rev'd on other grounds,* 125 S.Ct. 521 (2004); *see also Alpha Energy Savers, Inc. v.*

20  *Hansen*, 381 F.3d 917, 923 (9th Cir. 2004).

21  The parties dispute whether Plaintiff has alleged sufficient facts to demonstrate whether

22  he spoke as a private citizen or as a public employee.  In *Garcetti v. Ceballos*, 547 U.S. 410

23  (2006), the Supreme Court held that when a public employee speaks pursuant to his or her

24  official duties, the speech is not protected because any restriction on that speech "simply

25  reflects the exercise of employer control over what the employer itself has commissioned or

26  created." *Id*. at 422.  The Court distinguished "work product" that "owes its existence to [an

27  employee]'s professional responsibilities" from "contributions to the civic discourse," which

28  "retain the prospect of constitutional protection" for the speaker.  *Id.* at 421-22.  The Ninth

*United States District Court*
*For the Northern District of California*

4

United States District Court
For the Northern District of California

1    Circuit has held "that statements are made in the speaker's capacity as citizen if the speaker

2    'had no official duty' to make the questioned statements, ... or if the speech was not the product

3    of 'perform[ing] the tasks [the employee] was paid to perform.'"  *Posey v. Lake Pend Oreille*

4    *Sch. Dist. No. 84*, 546 F.3d 1121, 1127 (9th Cir. 2008) (quoting *Marable v. Nitchman*, 511 F.3d

5    924, 932-933 (9th Cir. 2007) and *Freitag v. Ayers,* 468 F.3d 528, 544 (9th Cir. 2006)).  The

6    determination of whether the speech in question was spoken as a public employee or a private

7    citizen is a mixed question of fact and law.  *Id.* at 1129, 1131 (holding that "when there are

8    genuine and material disputes as to the scope and content of the plaintiff's job responsibilities,

9    the court must reserve judgment ... until after the fact-finding process."); *see also Robinson,* 566

10   F.3d at 823-824 (holding that the scope of the public employee's job duties was a question of

11   fact").

12       Here, Plaintiff alleges that on March 29, 2008, PUSD placed him in the position of

13   Director of New Construction and Career Technician Education.  (Compl., ¶ 27.)  He does not

14   allege what his duties were in this position.  In June of 2008, PUSD placed Plaintiff in the

15   position of Director of New Construction, Maintenance, Operations, Facilities, Grounds,

16   Technology, and Career Technical Education.  (*Id.*)  In this position, Plaintiff:

17

18       was responsible for attending contractor meetings, overseeing the purchase of
         new furniture and technological equipment, coordinating design of classrooms,
         coordinating Career Technical Education oversight meetings, serving as the
19       point of contact with the public regarding new construction in PUSD, overseeing
         updates to PUSD construction standards, overseeing dozens of grounds and
20       maintenance crew, organizing small bid packages for repair work, representing
         PUSD in negotiation meetings with contractors, subcontractors, and the district
21       on change orders and budgets, exercising final walk through signing authority on
         renovations and new construction, and organizing the PUSD Board Facilities
22       Subcommittee, among similar tasks.

23   (Compl., ¶ 28.)  Plaintiff reported directly to Assistant Superintendent of Business, Mark

24   Bonnet ("Bonnet"), and his "second-line" supervisor was Superintendent Barbara Wilson

25   ("Wilson").  (*Id.*)

26       Plaintiff alleges that in May of 2008, he became aware of certain budgetary practices he

27   found both questionable and concerning.  He raised his concerns with Bonnet regarding what he

28   believed was PUSD's improper allocation of deferred maintenance funding for the adult

5

United States District Court

For the Northern District of California

1  education roofing renovation project. (*Id*., ¶ 3.)  In September of 2008, Plaintiff raised the

2  following additional concerns to Bonnet:

3

4      (1) improper use of deferred maintenance funding; (2) the possible improper
       encroachment by the adult education program into the general fund and the ADA
5      funding stream for K-12; (3) the apparent failure of the adult education program
       to pay operational costs in water and electrical in addition to failing to contribute
6      to maintenance, grounds, and technology services; and (4) violations committed
       during the modernization of the Boy's and Girl's club.

7  (*Id*., ¶ 4.)  From September of 2008 through May of 2009, Plaintiff repeatedly raised these

8  issues with Bonnet, Wilson, PUSD Board of Trustees President Ruben Rosales, and PUSD

9  Board of Trustees members Percy McGee, Jr. and Joe Arenivar. (*Id*., ¶ 5.)  Towards the end of

10  2008 and into 2009, Plaintiff also became aware of a financial conflict of interest between

11  McGee and Wilson. (*Id*., ¶ 9.)  Over a period of several months, Plaintiff began to press Board

12  members to question McGee regarding his financial status with Wilson. (*Id*., ¶ 85.)

13      Out of concern that PUSD, through Wilson, had violated state grant requirements

14  regarding the transfer of title for the Boy's and Girl's Club, Plaintiff emailed Wilson, copying

15  McGee and Arenivar. (*Id*., ¶ 59.)  In response to an email from Wilson asking Plaintiff why he

16  was doing this, Plaintiff responded that "he believed it to be his job as a civil servant to

17  denounce wrongdoing when he identified it." (*Id*., ¶ 60.)

18      Plaintiff argues that he was not required, in his position as Director of New

19  Construction, Maintenance, Operations, Facilities, Grounds, Technology, and Career Technical

20  Education to report on issues outside of his chain of command and that the issues on which he

21  raised concerns were not directly related to his responsibilities.  He contends that he was not

22  responsible for examining the general fund or the adult education fund budgets and was not

23  required to examine the proper titling of properties.  Defendants counter that the concerns

24  Plaintiff raised relate to the areas listed in his job title and that Plaintiff emailed that he raised

25  these concerns because "he believed it to be his job as a civil servant to denounce wrongdoing

26  when he identified it."  The scope of Plaintiff's job duties is a question of fact. *See Robinson,*

27  566 F.3d at 823-824.  Plaintiff has not alleged sufficient facts in his complaint regarding the

28  scope of his job duties to enable to Court to make a determination at this procedural stage

United States District Court

For the Northern District of California

1    regarding whether all of the issues raised by Plaintiff were done as part of his official duties.

2    Therefore, the Court denies Defendants' motion to dismiss Plaintiff's First Amendment claim.

3    **3.      Plaintiff's Procedural Due Process Claim.**

4    The Fourteenth Amendment provides that no State shall "deprive any person of life,

5    liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  Determining

6    whether Plaintiff was deprived of due process involves a two-part inquiry: (1) whether he was

7    deprived of a protected interest, and (2) if so, what process he was due.  *Logan v. Zimmerman*

8    *Brush Co.*, 455 U.S. 422, 428 (1982).  Thus, to state a procedural due process claim, Plaintiff

9    must establish that he had a protectible interest.  *Bateson v. Geisse*, 857 F.2d 1300, 1305 (9th

10   Cir. 1988).

11   The Fourteenth Amendment's due process guarantee applies to public employees who

12   have a "property interest" in the terms or conditions of their employment.  *Board of Regents v.*

13   *Roth*, 408 U.S. 564, 576  (1972).  That interest is established "by existing rules or

14   understandings that stem from an independent source such as state law-rules or understandings

15   that secure certain benefits and that support claims of entitlement to those benefits."  *Id.* at 577.

16   "[A] public employee in California who can establish the existence of rules and understandings,

17   promulgated and fostered by state officials, that justify her legitimate claim to continued

18   employment absent sufficient cause, has a property interest in such continued employment

19   within the purview of the due process clause."  *McGraw v. City of Huntington Beach*, 882 F.2d

20   384, 389 (9th Cir. 1989) (citing *Skelly v. State Personnel Board*, 15 Cal. 3d 194, 207 (1975)).

21   The California Supreme Court has held that:

22   The state has a constitutional obligation to provide a hearing to decide whether
     dismissal or suspension is appropriate. A teacher also has a right to an
23   opportunity to respond to the particular charges asserted by the district and to
     clear his or her name. An opportunity to challenge the state's factual
24   determinations before an impartial and disinterested decision maker satisfies the
     two central concerns of procedural due process, the prevention of unjustified or
25   mistaken deprivations and the promotion of participation and dialogue by
     affected individuals in the decisionmaking process.

26

27   *California Teachers Ass'n v. State of California*, 20 Cal.4th 327, 344 (1999)(internal quotation

28   marks and citation omitted).

7

1   Here, Plaintiff alleges that the decision makers were biased, that he was not given

2   adequate notice, and that he was not given an adequate opportunity to challenge the state's

3   factual determinations.  The fact that Plaintiff retired before the Commission on Professional

4   Competence had an opportunity to hold a hearing on his termination is not fatal to Plaintiff's

5   claim.  Plaintiff alleges that by placing him on administrative leave without pay, he was

6   constructively discharged.  The Court declines to find, at this procedural stage, that Plaintiff

7   cannot state a procedural due process claim premised on constructive, as opposed to actual,

8   discharge.  Therefore, the Court denies Defendants' motion to dismiss Plaintiff's procedural due

9   process claim.

10   **4.      Plaintiff's State Law Claims.**

11   Defendants argue that because all of Plaintiff's federal claims should be dismissed, the

12   Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

13   However, because the Court is not dismissing Plaintiff's federal claims, Defendants argument to

14   dismiss Plaintiff's state law claims on this ground fails.

15   However, Defendants also argue that Plaintiff's state law claims should be dismissed

16   based on the State's immunity under the Eleventh Amendment.  PUSD "is a state agency for

17   purposes of the Eleventh Amendment." *See Freeman v. Oakland Unified School Dist.*, 179

18   F.3d 846, 846 (9th Cir. 1999).  Moreover, contrary to Plaintiff's argument, "28 U.S.C. § 1367 is

19   not a congressional abrogation of state sovereign immunity." *Id*. (citing *Pennhurst State Sch.*

20   *and Hosp. v. Halderman,* 465 U.S. 89, 121 (1984)).  Although a State may waive its sovereign

21   immunity, the "test for determining whether a State has waived its immunity from federal-court

22   jurisdiction is a stringent one." *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 241

23   (1985).  The Supreme Court has found a waiver only if the State voluntarily invokes federal

24   jurisdiction or if the State makes a "clear declaration" that it intends to submit itself to federal

25   jurisdiction.  *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S.

26   666, 675-676 (1999) (citing *Pennhurst*, 465 U.S. at 99) (State's consent to suit must be

27   "unequivocally expressed")).  Therefore:

28       a State does not consent to suit in federal court merely by consenting to suit in
    the courts of its own creation. *Smith v. Reeves,* 178 U.S. 436, 441-445, 20 S.Ct.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1     919, 44 L.Ed. 1140 (1900). Nor does it consent to suit in federal court merely
      by stating its intention to "sue and be sued," *Florida Dept. of Health and*
2     *Rehabilitative Servs. v. Florida Nursing Home Assn.,* 450 U.S. 147, 149-150,
      101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) (*per curiam),* or even by authorizing
3     suits against it "'in any court of competent jurisdiction,'" *Kennecott Copper*
      *Corp. v. State Tax Comm'n,* 327 U.S. 573, 577-579, 66 S.Ct. 745, 90 L.Ed. 862
4     (1946).

5    *College Sav. Bank*, 527 U.S. at 676.

6           Plaintiff argues that California has waived its immunity to being sued in federal court

7    through the California Whistleblower Protection Act, Cal. Gov. Code §§ 8547, *et seq.* and the

8    Reporting by School Employees of Improper Governmental Activities Act, Cal. Ed. Code §§

9    44110, *et seq.* Both of these statutes provide that persons who violate them shall be liable "in

10   an action for damages" and that "[p]unitive damages may be awarded by the court where the

11   acts of the offending party are proven to be malicious." *See* Cal. Gov. Code § 8547.8(c); Cal.

12   Ed. Code § 44114(c). This language is analogous to the language the Supreme Court has

13   repeatedly rejected as insufficient to provide the clear intent required to waive sovereign

14   immunity. *See College Sav. Bank*, 527 U.S. at 676. Therefore, the Court finds that Plaintiff's

15   state-law claims against the PUSD and Wilson and McGee in their official capacities are barred

16   by the Eleventh Amendment and, thus, will be dismissed.

17          However, the Eleventh Amendment does not bar state law claims against state officials

18   acting in their individual capacities. *See Stoner v. Santa Clara County Office of Educ.*, 502

19   F.3d 1116, 1125 (9th Cir. 2007) ("An individual capacity suit for damages against state officials

20   alleged to have personally violated [a federal statute] does not implicate the principles of state

21   sovereignty protected by ... our Eleventh Amendment jurisprudence because such an action

22   seeks damages from the individual defendants rather than the state treasury."). Therefore, to the

23   extent Plaintiff brings his state-law claims against Wilson and McGee in their individual

24   capacities, they are not barred by the Eleventh Amendment and will not be dismissed.

25   **B.      Plaintiff's Motion to Strike**

26           **1.      Legal Standard Applicable to Motion to Strike.**

27          Federal Rule of Civil Procedure 12(f) provides that a court may "order stricken from any

28   pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous

                                                    9

1   matter." Immaterial matter "is that which has no essential or important relationship to the claim

2   for relief or the defenses being pleaded." *California Dept. of Toxic Substance Control v. ALCO*

3   *Pacific, Inc.*, 217 F. Supp. 2d 1028, 1032 (C.D. Cal. 2002) (internal citations and quotations

4   omitted). Impertinent material "consists of statements that do not pertain, or are not necessary

5   to the issues in question." *Id*. Motions to strike are regarded with disfavor because they are

6   often used as delaying tactics and because of the limited importance of pleadings in federal

7   practice. *Colaprico v. Sun Microsystems Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). The

8   possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause

9   the trier of fact to draw unwarranted inferences at trial is the type of prejudice that is sufficient

10  to support the granting of a motion to strike. *California Dept. of Toxic Substances Control*, 217

11  F. Supp. at 1028.

12            **2.    Plaintiff's Remedies.**

13            Defendants argue, and Plaintiff agrees, that the Eleventh Amendment bars Plaintiff from

14  recovering damages or retroactive injunctive relief against PUSD or Wilson and McGee in their

15  official capacities under his § 1983 claims. To the extent Plaintiff's complaint is unclear and

16  purports to seek such recovery against PUSD or Wilson and McGee in their official capacities,

17  the Court grants Defendants' motion to strike such requests for relief. However, as the Court

18  discusses above, seeking reinstatement is not retroactive relief. Moreover, as both parties agree,

19  the Eleventh Amendment is not a bar to Plaintiff seeking damages and retroactive injunctive

20  relief against Wilson and McGee in their individual capacities. As the Court discusses above,

21  Plaintiff adequately alleges brings claims against Wilson and McGee in their individual

22  capacities. Therefore, the Court denies Defendants' motion to strike Plaintiff's request for relief

23  against Wilson and McGee in their individual capacities for damages and/or injunctive relief, to

24  the extent Plaintiff seeks such recovery. Finally, Defendants seek to strike Plaintiff's request

25  for punitive damages against PUSD, Wilson and McGee pursuant to California Government

26  Code § 818. As all parties agree, the Eleventh Amendment bars recovery against PUSD or

27  Wilson and McGee in their official capacities for any damages, let alone punitive damages,

28  under Plaintiff's § 1983 claims. The court has already dismissed Plaintiff's state law claims

United States District Court
For the Northern District of California

10

1   against PUSD and Wilson and McGee in their official capacities.  Therefore, Plaintiff does not

2   have any claims upon which he could request punitive damages against PUSD or Wilson and

3   McGee in their official capacities.

4          To the extent Plaintiff seeks punitive damages against Wilson and McGee in their

5   individual capacities, § 818 does not provide any bar.  "California Government Code § 818 bars

6   any award of punitive damages against a public entity."  *Westlands Water Dist. v. Amoco*

7   *Chemical Co.,* 953 F.2d 1109, 1113 (9th Cir.1991); *see also Kizer v. County of San Mateo*, 53

8   Cal. 3d 139, 146 (1991).  Although suits against public officials in their official capacity are

9   "equivalent to a suit against the governmental entity itself," *see Larez v. City of Los Angeles*,

10  946 F.2d 630, 646 (9th Cir. 1991), suits against public officials in their individual capacity are

11  not.   Therefore, the Court denies Defendants' motion to strike Plaintiff's request for punitive

12  damages against Wilson and McGee in their individual capacities.

**CONCLUSION**

14          For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART PART

15  Defendants' motion to dismiss.  The Court DENIES Defendants' motion as to Plaintiff's First

16  Amendment and procedural due process claims, and GRANTS Defendants' motion as to

17  Plaintiff's state-law claims against PUSD and Wilson and McGee in their official capacities.

18  To the extent Plaintiff brings his state-law claims against Wilson and McGee in their individual

19  capacities, the Court DENIES Defendants' motion to dismiss.

20          The Court GRANTS IN PART and DENIES IN PART PART Defendants' motion to

21  strike.  To the extent Plaintiff's complaint is unclear and purports to seek damages or retroactive

22  injunctive relief against PUSD or Wilson and McGee in their official capacities, the Court

23  GRANTS Defendants' motion to strike.  However, reinstatement is not retroactive relief, and

24  therefore, Plaintiff's request to be reinstated is not struck.  The Court DENIES Defendants'

25  motion to strike Plaintiff's request for relief against Wilson and McGee in their individual

26  capacities for damages and/or injunctive relief, to the extent Plaintiff seeks such recovery.

27  Because the Court dismissed Plaintiffs' state-law claims against PUSD and Wilson and McGee

28  in their official capacities, there are no remaining claims on which Plaintiff seeks punitive

11

damages against these defendants.  Therefore, Defendants' motion to strike these remedies is

DENIED as MOOT.  Finally, the COURT DENIES Defendants' motion to strike Plaintiff's

request for punitive damages against Wilson and McGee in their individual capacities.

   **IT IS SO ORDERED.**

Dated: November 30, 2009

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California