UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Tim Galli,

    Plaintiff,

v.

Pittsburg Unified School District, et al.,

    Defendants.
_____/

No. C 09-3775 JSW (JL)

**ORDER DENYING PRODUCTION OF DOCUMENTS (Docket # 41)**

All discovery in this case has been referred by the district court (Hon. Jeffrey S. White) under 28 U.S.C. §636(b). The Court received the parties' joint statement regarding Plaintiffs' request for production of two documents:

1) A May 13, 2009 Memo from Juengert and Stevens to Board of Trustees, and

2) a November 26, 2008 Memo from Roy Combs to Tim Galli.

Copies of these documents were filed under seal.

The matter came on for hearing. Attorney for Plaintiff was Michael Venardi. Attorney for Defendants was Roy Combs.

The Court carefully considered the briefing and arguments of counsel and hereby concludes that Plaintiff's motion to compel should be denied: (1) The May 13, 2009 memo is privileged under 9th Circuit law which recognizes the application of the attorney-client

privilege to California Public entities; (2) The May 13, 2009 memo is protected by privilege because the Board of Trustees of the Pittsburg Unified School District is a party to this action; (3) the Board, as a body, holds the privilege, not an individual Board member; and (4) the Court does not compel the production of the November 26, 2008 Memo from attorney Combs to Plaintiff Galli because Galli was not authorized to waive the privilege.

I.  ANALYSIS

   A.  Preliminary Background

      1.  Plaintiff's Allegations

During Galli's employment with PUSD, he claims to have uncovered financial improprieties which violate California law. First Amended Complaint ("FAC") at ¶2. Galli's concerns included: (1) improper use of deferred maintenance funding; (2) the possible improper encroachment by the adult education program into the general fund and the ADA funding stream for K-12; (3) the apparent failure of the adult education program to pay operational costs in water and electrical in addition to failing to contribute for maintenance, grounds, and technology services; and (4) violations committed during the modernization of the Boy's and Girl's club. FAC at ¶¶ 4, 32, 50, 101, 116.

Beginning in or about May of 2008 and continuing through the vote to recommend his termination in May of 2009, Galli repeatedly raised these issues to Bonnett, Superintendent Barbara Wilson, PUSD Board of Trustees President Ruben Rosales, and PUSD Board of Trustees members Percy McGee, Jr. and Joe Arenivar. FAC at ¶¶4-5. Galli even sought an opinion from PUSD counsel on these issues. FAC at ¶6. He alleges that neither PUSD nor the PUSD board addressed his concerns. FAC at ¶7.

Additionally, from the end of 2008 into 2009, Galli became aware of a financial conflict of interest between McGee and Wilson. FAC at ¶9. Specifically, McGee was a financial advisor with Merrill Lynch and one of his clients was Wilson. FAC at ¶9. Galli disclosed this information to PUSD board members, and that conflict of interest was confirmed internally on the day before the board voted on Galli's termination. FAC at ¶¶85-86.

United States District Court
For the Northern District of California

1    Galli's final disclosure prior to PUSD's retaliation occurred on or about March 3, 2009. FAC at ¶12. Galli emailed Wilson, copying McGee and Arenivar, clarifying a public statement Wilson made regarding the transferring of title for the Boy's and Girl's Club. FAC at ¶12. Wilson responded almost immediately via e-mail, stating angrily "Why are you doing this? Why are you asking these questions?" FAC at ¶12. Hours later, PUSD placed Galli on administrative leave, allegedly due to misconduct. FAC at ¶13.

    On May 13, 2009, Wilson filed charges with the Board against Galli for his immediate suspension and dismissal. FAC at ¶14. The PUSD board voted to recommend Galli for termination, placing him on unpaid leave, on May 14, 2009. FAC at ¶15.

    On or about June 24, 2009, the Board allegedly approved supplemental charges that were brought against Galli. FAC at ¶16. PUSD served the Supplemental Notice of Intent to Terminate Galli that same day. FAC at ¶16. Even though the Board was aware of the financial relationship between McGee and Wilson, who brought the charges against Galli, McGee participated in both votes to recommend Galli's termination. FAC at ¶17.

    Galli, contends that, having been effectively terminated and constructively discharged, and unable to support his family and on the verge of losing his home, he was forced to apply for retirement in or around late July of 2009. FAC at ¶18. PUSD dismissed the charges against him on or about August 6, 2009 and the hearing process pursuant to Education Code section 44944 et seq. ended. FAC at ¶19.

    In connection with bringing the instant litigation, Galli contacted The Employment Law Group, P.C. ("TELG"). To aid TELG in their determination of whether or not to accept Galli as a client, Galli provided TELG with a memorandum dated November 26, 2008 sent from Roy Combs ("Combs"), counsel for PUSD in the instant matter, to Galli. Galli also provided TELG with the names of some potential witnesses, whom TELG could contact in their effort to corroborate Galli's claims. Included among this list of witnesses was Joe Arevinar, a member of the PUSD Board of Trustees. Arevinar signed a declaration for TELG and attached to that declaration a memorandum dated May 13, 2009, sent by Laurie Jeungert ("Jeungert") and Stevens to the PUSD Board of Trustees.

Also as part of this litigation, on January 29, 2010, Galli made his initial disclosures pursuant to Fed.R.Civ.P 26(a)(1). Galli included among those disclosures all the documents he had in his possession in support of his claims, including the two memoranda.

On February 17, 2010, counsel for PUSD sent counsel for Galli a letter, stating its belief that TELG and Galli were "in possession of confidential and privileged attorney-client communications." 2/17/2010 Ltr from Stevens to Scher, attached to Plaintiff's Motion to Compel as Ex. 1.[1] In support of their belief, counsel for PUSD cited Galli's production of the two above mentioned memoranda. For identification purposes, Galli bates numbered the November 26, 2008 memorandum from Combs to him as TG000075-000078 and the May 13, 2009 Jeungert and Stevens memorandum to the Board of Trustees as TG000179-000183. Galli served PUSD counsel with the above via email.

TELG promptly responded on February 18, 2010. See 2/18/2010 Email from Scher to Stevens and Combs, sent at 1:06 p.m, attached to Plaintiff's Motion to Compel as Ex. 2. (Again, there are no exhibits attached to Plaintiff's Motion to Compel, nor is there anything attached to the parties' Joint Letter). TELG indicated that it would delete the two memoranda from their networks and advise Galli to do the same. Upon advising PUSD counsel of their intention to do so, TELG promptly deleted the two memoranda from the networks and advised Galli to do the same. TELG further advised PUSD that it would maintain two hard copies to be used in the instant Motion to Compel.

Plaintiff's Motion to Compel was e-filed at Docket # 39, but Judge White reminded the parties of their duty to first file a joint statement of their dispute, which is what he referred to this Court. The Motion to Compel was not fully briefed and is not before this Court, as such. The memos were filed under seal and this Court reviewed them as part of its preparation to resolve this discovery dispute. After submitting the Joint Letter on April 9, 2010, the parties attempted to mediate their entire lawsuit, but were unsuccessful and

---

[1] There are no exhibits attached to Plaintiff's Motion to Compel, however, Plaintiffs' counsel was able to obtain copies from former counsel and provide them to the Court.

asked this Court to restore the discovery dispute to its calendar, so they can proceed with discovery and to trial.

## II. THIS DISCOVERY DISPUTE

### A. Background

The issue around the privileged nature of these documents was raised the day after defense counsel reviewed documents produced by plaintiff's initial disclosures. Defense counsel initially thought the documents might have been inadvertently produced in their own production and have demanded return or destruction of the documents. However, Plaintiff's counsel informed defendants that they received one document (the May 13, 2009 memorandum) from a board member and the other document (the November 26, 2008 memorandum) from plaintiff himself. Both documents are captioned, in bold lettering: **"Attorney-Client Privileged and Confidential."**

## III. ANALYSIS

### A. The 9th Circuit Recognizes the Application of the Attorney-client privilege to California Public Entities And the May 13, 209 Memo Is Privileged.

The 9th Circuit recognizes the application of the attorney-client privilege under California law in federal cases. Indeed, in *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003), the 9th Circuit expressly recognized that "[t]he 'lawyer-client privilege,' as it's officially known in California, is "no mere peripheral evidentiary rule, but is held vital to the effective administration of justice." Id. at 721, citing *Roberts v. City of Palmdale*, 5 Cal. 4th 363 (1993).

California Evidence Code sections 950 et. seq. define the attorney-client privilege. Section 951 defines a client for the purpose of the privilege as a "person" and California Evidence Code section 175 defines "person" to include a "public entity." Accordingly, a public entity may assert the attorney- client privilege. *Vela v. Superior Court* (1989) 208 Cal.App.3d 141, 150; *Sacramento Newspaper Guild v. Sacramento County Board of Supervisors* (1968) 263 Cal.App.2d 41, 53. The Pittsburg Unified School District ('District")

is a public entity in the State of California and, as such, it may hold and may assert the attorney-client privilege.

### 1. The May 13, 2009 Memo is Protected by Privilege Because the Board Is a Party to this Action.

An action naming the District as a party is an action against the Board of Trustees. Pursuant to California statutes, the District is governed by a Board of Trustees ("Board"). California Education Code §§ 35010 and 35160 et seq. Thus, contrary to Plaintiff's assertion that the Board is merely closely related to the District, the Board is by law responsible for the District.

The unity between the District and the Board is underscored by other statutes as well. For example, California Government Code section 54956.9, part of the Brown Act, expressly authorizes boards of public entities to meet in closed session to discuss pending or threatened litigation. *Roberts v City of Palmdale*, 5 Cal.4th at 374. It makes clear that the Board give direction in closed session to its legal counsel regarding litigation to which the agency is a party. In short, litigation that involves the agency as a party, as here, necessarily includes the Board.

Indeed, when legal counsel advise the District on legal matters, including this litigation, counsel do so and can only do so by providing advice to the Board or the Board's designated representative. *Roberts v. City of Palmdale*, 5 Cal. 4th 363 (1993) Thus, Plaintiff's argument that the protections of the attorney-client privilege or work-product doctrine do not extend on the grounds that the Board is not a party is misplaced. The District is a named defendant in the case and the Board is the District as a practical and legal matter. In short, the Board is the client and the full scope of the attorney-client privilege and work product protection applies.

Accordingly, when Ms. Juengert and Mr. Stevens issued legal advice on May 13, 2009, in the form of a memo to their client, the Board of Education of the Pittsburg Unified School District, that memo was protected by the attorney-client privilege. That same body is the client in this litigation.

### 2. The Board, As A Body, Holds The Privilege, Not An Individual Board Member.

The Board holds the privilege and has not waived the privilege. The power to waive the privilege rests with the Board, and the actions of an individual Board member alone cannot waive the privilege. *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 348-349 (1985) Indeed, "[Board members] must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interest of the [District] and not of themselves as individuals." *Id.* at 349.

Board member Arenivar was not authorized to waive the privilege over the memo. His unilateral disclosure, therefore, does not waive the privilege because he had no authority to do so. Indeed, when Board member Arenivar disclosed the memo to TELG, he was acting contrary to his fiduciary duties as a Board member and was acting without any authorization from the Board. Accordingly, Arenivar's disclosure did not waive the attorney-client privilege. Moreover, though voluntary disclosure may waive the privilege in certain circumstances, it does not under the authority cited by Plaintiff because in this case the client is an entity.

Finally, Plaintiff's argument that the letter is the only source of the information he needs regarding the purported conflict is not accurate. Plaintiff may depose, and has noticed the depositions of, the two people he claims had a financial relationship at the time of the purported acts towards him, namely Dr. Wilson and Trustee McGee. He can ask each of them directly whether they had any business or financial relationship, and if so, when. The privileged letter is not, therefore, necessary for plaintiff to obtain the factual information he seeks regarding any purported conflict of interest. Consequently, there is no ground to violate the attorney-client privileged on the basis that the May 13, 2009 letter is the only source of the information he seeks. Furthermore, the attorney-client privilege is absolute. There is a no exception on a showing of "substantial need," as there might be with a document which was work product.

The cases cited by Plaintiff are inapposite because they involve instances of claims of privilege by a non-party, which is not the case here.

**B.   This Court Declines to Compel Production of the November 26, 2008 Memo from Legal Counsel to Mr. Galli Because Mr. Galli Was Not Authorized to Waive the Privilege.**

The November 26, 2008 memo was a communication from the District's legal counsel to its client, the District, via Mr. Galli in his official capacity as a District administrator.  At the time, Mr. Galli was a Director with several functional areas of responsibility including facilities, maintenance, and technology (among others), and the memo was explicitly addressed to him in that capacity.  It is axiomatic that the attorney-client privilege extends to communications within an organization that are beyond the control group.  *Upjohn v. U.S.*, 449 U.S. 383 (1981).  The memo addressed the subject matters related to his areas of functional responsibility as an employee of the District and was addressed to him in his capacity as a senior level District employee.  The memo was not directed to him as an individual.

As an employee, Mr. Galli never had the authority to waive the privilege.  The District remained the holder of the privilege, not Mr. Galli, and only the District, through action of the Board, could waive the privilege.  The Board never authorized Mr. Galli to waive or release the memo.  Thus, Mr. Galli did not, and never had authority to waive the privilege.  Nor was Mr. Galli the client for whom the memo was prepared.  The District remained the client and the memo was prepared for the District.  Consequently, the November 26, 2008 communication to Mr. Galli is attorney-privileged under Upjohn, and Mr. Galli did not have the authority to waive that privilege.  As an employee, Mr. Galli was never given the authority to waive the attorney-client privilege.  *U.S. v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996).

Finally, "since a corporate employee cannot waive the corporation's privilege, that same individual as an ex-employee cannot do so."  *U.S. v. Chen*, 99 F.3d at 1502.  Thus, the November 26, 2008 memo remains protected by the attorney-client privilege.

**III.   CONCLUSION**

Plaintiff's motion to compel is denied: (1) The May 13, 2009 memo is privileged under 9th Circuit law which recognizes the application of the attorney-client privilege to California Public Entities; (2) The May 13, 2009 memo is protected by privilege because the

Board of Trustees of the Pittsburg Unified School District is a party to this action; (3) the Board, as a body, holds the privilege, not an individual Board member; and (4) the Court does not compel the production of the November 26 Memo from attorney Combs to Plaintiff Galli because Galli was not authorized to waive the privilege.

IT IS SO ORDERED.

DATED: October 26, 2010

_____
JAMES LARSON
United States Magistrate Judge

G:\JLALL\CASES\CIV-REF\09-3775\ORDER DENY 41.wpd