IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIM GALLI,<br><br>    Plaintiff,<br><br>v.<br><br>PITTSBURG UNIFIED SCHOOL DISTRICT,<br>BARBARA WILSON and PERCY MCGEE,<br><br>    Defendants. | No. C 09-03775 JSW<br><br>**ORDER REGARDING MOTIONS<br>FOR SUMMARY JUDGMENT** |

Now before the Court is the motion for summary judgment filed by Defendants Pittsburg Unified School District (the "PUSD"), Superintendent Barbara Wilson ("Wilson") and Percy McGee ("McGee") (collectively, "Defendants") and the motion for summary adjudication of issues filed by Plaintiff Tim Galli ("Plaintiff"). Having carefully reviewed the parties' papers and the relevant legal authority, the Court hereby grants Defendants' motion for summary judgment and denies Plaintiff's motion for summary adjudication.

**BACKGROUND**

In this action, Plaintiff is suing Defendants for what he contends was an improper discharge and suspension of pay without proper due process and retaliation for protected speech. Plaintiff was the Director of New Construction, Maintenance, Operations, Facilities, Grounds, Technology, and Career Technical Education for the PUSD. Wilson was, during the operative time, the PUSD Superintendent and McGee was a member of the PUSD's Board of Trustees ("Board"). Plaintiff reported directly to Assistant Superintendent of Business, Mark

Bonnett ("Bonnett"), and his "second-line" supervisor was Superintendent Wilson. (First Amended Compl. ("FAC"), ¶ 28.)

On May 14, 2009, Wilson sent Plaintiff a letter which stated, *inter alia*: "The Board of Education has directed me to suspend your pay while you are on leave from the District, effective May 15, 2009." (Declaration of Mark L. Venardi in Opposition to Defendants' Motion for Summary Judgment ("Venardi Decl."), Ex. J.) On May 14, 2009, Plaintiff also received from PUSD a "Notice of Intent to Immediately Suspend and Dismiss and Statement of Charges of Dismissal." (Amended Declaration of Timothy Galli in Opposition of Defendants' Motion ("Amended Galli Decl."), ¶ 2, Ex. A.) The Notice is dated May 13, 2009. (*Id*., Ex. A at p. 3.) The Notice states that Plaintiff was "immediately suspended pursuant to [California Education Code §] 44939" and that Plaintiff was entitled to post a bond with the PUSD equal to two years of his salary if he wished to continue receiving his salary as set forth in Section 44393. (*Id*., Ex. A.).

Plaintiff initially stated that he was suspended without pay on May 15, 2009. (Declaration of Timothy Galli in Opposition to Defendants' Motion ("Orig. Galli Decl."), ¶ 13.) However, in his amended declaration, Plaintiff changes his testimony and states that "It was and is my belief that my suspension without pay began on May 13, 2009. ..." (Amended Galli Decl,, ¶ 6.) Wilson testified that Plaintiff's employment status changed from being on leave with pay to leave without pay on May 13, 2009. (Venardi Decl., Ex. A (Deposition of Barbara Wilson) at 56:9-16.) Defendants also stated in response to requests for admissions that Plaintiff was "immediately suspended without out pay ... on or about May 13, 2009." (*Id*., Ex. E (Response to Request for Admission No. 48).) Defendants' payroll records indicate that Plaintiff's last day of paid service was May 14, 2009. (Declaration of Karen Williams in Support of Defendants' Amended Motion, Ex. 1.)

Pursuant to California Education Code §§ 44934 and 44939, Plaintiff had thirty days to request a hearing before Commission on Professional Competence ("CPC"). Plaintiff requested a hearing before the CPC within the thirty-day window. A hearing was initially scheduled for August 5 through 6, 2009, but pursuant to a joint request for a continuance, the hearing was

continued to October 27 though 29, 2009. (Declaration of Joshua A. Stephens ("Stephens Decl."), Ex. 1.) However, before the hearing was held, Plaintiff retired. His retirement was effective on July 1, 2009. (*Id*., Ex. 2.) Upon receiving notice of Plaintiff's retirement, the CPC dismissed the proceedings. (*Id*., Ex. 3.)

The Court will address additional specific facts as required in the analysis.

## ANALYSIS

**A.    Standards Applicable to Motions for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the non-moving party must go beyond

3

1 the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine
2 issue for trial." Fed. R. Civ. P. 56(e).

3 In order to make this showing, the non-moving party must "identify with reasonable
4 particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275,
5 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact
6 must take care adequately to point a court to the evidence precluding summary judgment
7 because a court is "'not required to comb the record to find some reason to deny a motion for
8 summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th
9 Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418
10 (9th Cir. 1988)). If the non-moving party fails to point to evidence precluding summary
11 judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.    Defendants' Motion.**

**1.    Plaintiff's First Amendment Claim.**

To prevail on a claim against a government employer for violation of the First
Amendment, an employee bears the burden of demonstrating: "(1) whether the plaintiff spoke
on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public
employee; [and] (3) whether the plaintiff's protected speech was a substantial or motivating
factor in the adverse employment action." *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009)
(quoting *Eng v. Cooley,* 552 F.3d 1062, 1070 (9th Cir. 2009)). If the employee meets this
burden, the employer may prevail by demonstrating either that: (a) under the balancing test
established by *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968), that its "legitimate administrative
interests outweigh the employee's First Amendment rights;" or (b) "under the mixed motive
analysis established by *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287
(1977), the employer would have reached the same decision even in the absence of the
employee's protected conduct." *Roe v. City of San Diego,* 356 F.3d 1108, 1112, *rev'd on other
grounds,* 125 S.Ct. 521 (2004); *see also Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917,
923 (9th Cir. 2004).

The parties dispute whether Plaintiff has alleged sufficient facts to demonstrate whether he spoke as a private citizen or as a public employee. In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court held that when a public employee speaks pursuant to his or her official duties, the speech is not protected because any restriction on that speech "simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id*. at 422. The Court distinguished "work product" that "owes its existence to [an employee]'s professional responsibilities" from "contributions to the civic discourse," which "retain the prospect of constitutional protection" for the speaker. *Id.* at 421-22. The Ninth Circuit has held "that statements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to make the questioned statements, ... or if the speech was not the product of 'perform[ing] the tasks [the employee] was paid to perform.'" *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1127 (9th Cir. 2008) (quoting *Marable v. Nitchman*, 511 F.3d 924, 932-933 (9th Cir. 2007) and *Freitag v. Ayers,* 468 F.3d 528, 544 (9th Cir. 2006)).

The determination of whether the speech in question was spoken as a public employee or a private citizen is a mixed question of fact and law. *Id.* at 1129, 1131 (holding that "when there are genuine and material disputes as to the scope and content of the plaintiff's job responsibilities, the court must reserve judgment ... until after the fact-finding process."); *see also Robinson,* 566 F.3d at 823-824 (holding that the scope of the public employee's job duties was a question of fact"). "'[T]he question of the scope and content of a plaintiff's job responsibilities is a question of fact,' [but] the 'ultimate constitutional significance of the facts as found' is a question of law." *Eng,* 552 F.3d at 1071 (quoting *Posey*, 546 F.3d at 1129-30.)

Here, Plaintiff raised concerns to his direct supervisor, Mark Bonnett, to Wilson, and to members of the Board, including McGee regarding: (1) improper use of deferred maintenance funding; (2) the possible encroachment by the adult education program into the general fund and the ADA funding stream for K-12; (3) the failure of the adult education program to pay operational costs in water and electrical, and its failure to contribute for maintenance, grounds, and technology services; and (4) violations committed during the modernization of the Boy's and Girl's Club. (Orig. Galli Decl., ¶ 5.) Plaintiff also became aware of and raised concerns to

5

members of the Board that the PUSD had issued a $3.3 million contract for the construction of a new District high school without utilizing the required public bidding process. (*Id.*, ¶ 7.)

The parties do not dispute the substance of Plaintiff's job responsibilities. Plaintiff's responsibilities in his position with PUSD included: (1) planning, organizing, and directing the maintenance and operations programs; (2) recommending building programs and priorities and preparing and submitting application plans for state funds; (3) coordinating, implementing, and supervising the construction, modernization, reconstruction and relocation of new and existing schools and district facilities; (4) coordinating the selection, monitoring and supervision of services provided by architects, engineers, contractors, inspectors, and others used in support of facility programs; (5) conducting investigations and making recommendations related to planning, design, construction, change orders, design modification and contract administration in the district's building programs; (6) assisting in the budget planning and workload management activities of administrators and school principals regarding maintenance; and (7) other duties as assigned. (Combs Decl., Ex. 4 (Galli Depo.) at 32:19-21 and Ex. 3.)

Accordingly, the Court is tasked with determining the ultimate constitutional significance of these facts as question of law. *See Eng,* 552 F.3d at 1071. Plaintiff testified that the concerns he reported regarding deferred maintenance funding and the adult education program were discovered as part of his effort to find funding, as directed by his supervisor, in order to save jobs in his program. He stated that:

> as a supervisor, I owed it to my employees, if there was a source of funding out there that would help them save their jobs – if we're spending money on adult education and it's improper and there's a source of money for maintenance that might possibly save jobs, I had both a moral and an ethical responsibility to see that the money was returned to maintenance.

(Combs Decl., Ex. 4 (Galli Depo.) at 73:24-74:6.) He further testified, with respect to the concerns he expressed regarding the Girl's and Boy's Club, that he believed it was part of his job to be aware of any potential obligations against PUSD's properties. (*Id*, Ex. 4 at 176:10-15.) Plaintiff's supervisor and Wilson also testified that when Plaintiff raised these concerns, he was doing so as part of his job duties. (Combs Decl., Ex. 5 (Deposition of Mark Bonnett) at 68:3-13, 71:13-22 and Ex 6 (Deposition of Barbara Wilson) at 105:4-106:5.)

6

Plaintiff does not dispute that when he raised these concerns, he was acting pursuant to his job responsibilities. Instead, what he argues is that, while he made these disclosures as an employee, he was also, "in part," making them as a concerned public citizen. (Opp. at 10.) In support of this argument, Plaintiff cites to testimony from his supervisor that although he believed Plaintiff was coming forward as part of his job duties, Plaintiff was also, in part, coming forward as a citizen. (Venardi Decl., Ex. D (Bonnett Depo.) at 68:3-13.) Additionally, in an email in which Plaintiff raised some of these concerns regarding deferred maintenance funding with his supervisor, Plaintiff wrote "[t]he more I observe this process, the more offended I become, both as an employee, a taxpayer of Pittsburgh, and a PUSD alumni." (*Id*., Ex D at 69:14-70:18.)

However, because Plaintiff does not dispute that he made the disclosures at issue pursuant to his job duties, he cannot defeat summary judgment by arguing that, simultaneously, he also cared about these topics as a citizen. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes. ..." *Ceballos*, 547 U.S. at 421-22 (finding it "immaterial" that the employee "experienced some personal gratification from writing the memo").

Plaintiff also argues that he made these disclosures to persons "outside of his chain of command." (Opp. at 11.) In addition to speaking to his direct supervisor, Plaintiff raised these concerns with Wilson and with several members of the Board. Plaintiff alleges that he raised these concerns directly to Wilson, McGee and Arenviar because he did not trust Wilson or his supervisor to act in response to his concerns. (FAC, ¶ 37.) Moreover, he knew that the Board had oversight responsibilities over the allocation of all PUSD resources and must approve any expenditure over $10,000. (*Id*., ¶ 38.) These allegations are binding on Plaintiff as judicial admissions. *See American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them. ...A statement in a complaint ... is a judicial admission.").

7

The Ninth Circuit has not found that raising concerns internally, to persons above the plaintiff's direct supervisor, renders the statements made to be protected speech. For example, in *Freitas*, 468 F.3d at 533-34, the plaintiff, who was a prison guard, made complaints to several individuals within the prison who were above her direct supervisor, including a Lieutenant's supervisor, the associate warden, the warden, and the director of the California Department of Corrections and Rehabilitation ("CDCR"). Among these individuals, the only one the court had concerns about was the CDCR director. The court held that whether Plaintiff's letter to the CDCR was constitutionally protected under the First Amendment was a "closer question." The court was "unsure whether prison guards [were] expected to air complaints regarding conditions in their prisons all the way up to the Director of the CDCR at the state capitol in Sacramento." *Id*. at 546. Similarly, in *Huppert v. City of Pittsburgh*, 574 F.3d 696, 699 (9th Cir. 2009), two police officers wrote a report and directed it to the chief of police and the city manager, neither of whom were the officers' direct supervisor. Nevertheless, the court held that the report was not protected speech. *Id*. at 707.

In accordance with *Freitas* and *Huppert*, the Court finds that raising his concerns with the superintendent and several board members, does not render Plaintiff's statements protected speech. Perhaps if Plaintiff had raised his concerns with the State Secretary of Education, analogous to the Director of the CDCR, the Court might find it to be a closer question. However, because Plaintiff only raised his concerns internally, to those who were ulitmately responsible for the school expenditures in question, the Court finds that Plaintiff fails to demonstrate that he was speaking as a citizen, as opposed to an employee. Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's First Amendment claim.

**2. Plaintiff's Procedural Due Process Claim.**

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a violation of procedural due process, as a government employee, Plaintiff must show: (1) a property interest in his continued employment, (2) deprivation of that interest, and that his government employer either (3) did not notify him of the charges against him, or (4) did not

8

give him an opportunity to respond before his interest was deprived. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). However, due process does not always require a pre-deprivation hearing. "[W]here a State must act quickly, or where it would be impractical to provide pre-deprivation process, post-deprivation process satisfies the requirements of the Due Process Clause." *Gilbert v. Homar,* 520 U.S. 924, 930 (1997). When there is an "important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted," the state may be justified in delaying "the opportunity to be heard until after the initial deprivation." *FDIC v. Mallen,* 486 U.S. 230, 240 (1988). Due process does not entitle a public employee to a pre-suspension hearing so long as a post-suspension hearing is held promptly and the employer's decision to suspend the employee is not "baseless or unwarranted." *Mustafa v. Clark County Schl. Dist.*, 157 F.3d 1169, 1177 (9th Cir. 1998).

In *Mustafa*, a former student filed a police report accusing the teacher of "open and gross lewdness" at an after-school meeting. Upon receipt of this information, the school district immediately suspended the teacher without pay. *Id*. at 1172. At an arbitration, the arbitrator ruled that the accusations against the teacher could not be substantiated by clear and convincing evidence and ordered that the teacher be reinstated with back pay. *Id*. at 1173. The district attorney filed a criminal complaint against the teacher, but the charge was dismissed due to insufficient evidence. *Id*. The Ninth Circuit reasoned that, "[a]s a public school teacher, Mustafa occupies a position of great public trust and high visibility." *Id*. at 1177 (internal quotation marks omitted). Despite the fact that the charges against the teacher were never substantiated, the court found that the school district's decision to suspend him was not "baseless or unwarranted." *Id*.

Moreover, "where adequate procedures exist, a person cannot state a claim for denial of procedural rights when she has elected to forego a complete hearing." *Correa v. Nampa Sch. Dist.*, 645 F.2d 814, 817 (9th Cir. 1981).

The California Supreme Court has held that:

The state has a constitutional obligation to provide a hearing to decide whether dismissal or suspension is appropriate. A teacher also has a right to an opportunity to respond to the particular charges asserted by the district and to clear his or her name. An opportunity to challenge the state's factual

9

determinations before an impartial and disinterested decision maker satisfies the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process.

*California Teachers Ass'n v. State of California*, 20 Cal. 4th 327, 344 (1999) (internal quotation marks and citation omitted).

Plaintiff does not challenge the sufficiency of the procedures under California law, but rather, contends that Defendants failed to follow these procedures and thereby denied him due process. Plaintiff contends that he was not afforded due process because (1) he was not given adequate prior notice before he was suspended without pay, (2) his conduct did not constitute "immoral conduct," and (3) the decision makers were biased. Plaintiff also contends that by placing him on administrative leave without pay, he was constructively discharged because the amount of the bond was too high.

### i. Notice of Suspension.

As Plaintiff states, it is undisputed that he was a permanent employee as defined by the California Education Code and that California Education Code Section 44939 governed the statutory procedures required to be followed before he could have been suspended without pay. (Plaintiff's Amended Opp. at 8.) California Education Code Section 44939 provides:

> Upon the filing of written charges, duly signed and verified by the person filing them with the governing board of a school district, or upon a written statement of charges formulated by the governing board, charging a permanent employee of the district with immoral conduct ... the governing board may, if it deems such action necessary, immediately suspend the employee from his duties and give notice to him of his suspension, and that 30 days after service of the notice, he will be dismissed, unless he demands a hearing.
>
> ... In such event the permanent employee who demands a hearing within the 30-day period shall continue to be paid his regular salary during the period of suspension and until the entry of the decision of the Commission on Professional Competence, if and during such time as he furnishes to the school district a suitable bond, as a guarantee that the employee will repay to the school district the amount of salary so paid to him during the period of suspension in case the decision of the Commission of Professional Competence is that he shall be dismissed. If it is determined that the employee may not be

dismissed, the school board shall reimburse the employee for the cost of the bond.[1]

It is undisputed that on May 14, 2009, Plaintiff was given notice of the charges against him and that PUSD was suspending him without pay and filed charges for his dismissal. The parties dispute when his suspension without pay began. Plaintiff argues that his suspension without pay began the day before he was given notice. Defendants, on the other hand, argue that his suspension without pay began the day after he was given notice. However, regardless of whether Plaintiff's suspension without pay started the day before or the day after he was given notice, pursuant to the statute, Defendants were authorized to immediately suspend Plaintiff without pay upon the filing of writing charges or upon a written statement of charges formulated by the school board. *See* Cal. Educ. Code § 44939; *California Teachers Ass'n*, 20 Cal. 4th at 331 ("The charge of immoral conduct, based upon allegations that plaintiff engaged in inappropriate verbal exchanges with students, permitted the district to suspend plaintiff immediately without pay.") (citing Cal. Educ. Code § 44939). Due process did not entitle Plaintiff to a pre-suspension hearing so long as a post-suspension hearing was held promptly and the PUSD's decision to suspend him was not "baseless or unwarranted." *Mustafa*, 157 F.3d 1169, 1177 (9th Cir. 1998). Had Plaintiff not retired, he would have had a hearing before the PCP. In fact, a hearing was scheduled for August 5 through 6, 2009, and then continued to October 27 though 29, 2009, but the proceedings before the CPC were dismissed when the CPC discovered Plaintiff had retired. (Stephens Decl., Exs. 1, 3.)

Plaintiff does not argue that Defendants' decision to suspend him was "baseless or unwarranted." Instead he argues that his public urination incident did not amount to conduct demonstrating an unfitness to teach because it was an isolated incident and no students witnessed the event. The California Supreme Court has clarified that the term "immoral

---

[1] Plaintiff reads this statute as limiting the grounds for immediate suspension without pay to "knowing membership in a Communist Party." Based on the plain language of this statute, the Court does not read Section 44939 as so limited. Nor, apparently does the California Supreme Court. *See California Teachers Ass'n*, 20 Cal. 4th at 331 ("The charge of immoral conduct, based upon allegations that plaintiff engaged in inappropriate verbal exchanges with students, permitted the district to suspend plaintiff immediately without pay.") (citing Cal. Educ. Code § 44939). Therefore, the Court rejects this argument.

11

1  conduct" in the California Education Code "embrace[s] only conduct demonstrating unfitness to
2  teach," *see Fontana Unified School Dist. v. Burman*, 45 Cal. 3d 208, 219-220 (1988) (citing
3  *Morrison v. State Board of Education*, 1 Cal. 3d 214, 229-230 (1969)).

4  The Notice of Intent to Immediately Suspend and Dismiss and Statement of Charges for
5  Dismissal provides the PUSD's basis for his immediate suspension. The Notice states that on a
6  school day in December of 2008, Plaintiff was observed walking over to a Mini Cooper driven
7  by a PUSD contractor, unzipping his pants and urinating on the car while the contractor sat
8  inside the car. (Amended Galli Decl., Ex. A.) At the time of the urination incident, the car was
9  parked in front of the Pittsburgh High School and there were students outside in front of the
10 school. (*Id.*) When Plaintiff was confronted about the incident, he admitted that he had
11 urinated on the car, but insisted that it happened in August, "presumably to point out that no
12 students would have been around." (*Id.*) The PUSD determined that Plaintiff lied about when
13 the incident occurred and, thus, found that "Immoral Conduct" and "Dishonesty" supported his
14 immediate suspension. (*Id.*) Plaintiff has not asserted in these cross-motions for summary
15 judgment that the independent grounds of dishonesty supporting the PUSD's decision was
16 improper or unsupported. Thus, regardless of whether Plaintiff's immoral conduct
17 demonstrated an unfitness to teach, based upon the PUSD's uncontroverted charges of
18 dishonesty, the Court finds that Plaintiff has not demonstrated the existence of a material
19 disputed fact regarding whether Defendants' decision to suspend him was entirely "baseless or
20 unwarranted."[2] Accordingly, the Court grants Defendants' motion for summary judgment on
21 Plaintiff's due process claim to the extent it is premised on the timing of his notice of the
22 suspension without pay.
23 ///
24 ////

---

[2] The Court notes that Plaintiff disputes whether any students actually witnessed his urination incident. However, whether every aspect of the PUSD's decision is ultimately proven is not the standard. Notably, in *Mustafa*, the school district's decision was reversed in arbitration proceedings and criminal charges were ultimately dismissed due to insufficient evidence. Nevertheless, the court held that the employer's decision to suspend the teacher was not "baseless or unwarranted." *Id.*, 157 F.3d at 1173.

12

### ii. **Bond Amount.**

Plaintiff also argues that Defendants violated his Due Process by requiring him to pay a bond amount that was not suitable. California Education Code § 44939 provides in pertinent part:

> ...the permanent employee who demands a hearing within the 30-day period shall continue to be paid his regular salary during the period of suspension and until the entry of the decision of the Commission on Professional Competence, if and during such time as he furnishes to the school district a suitable bond, or other security acceptable to the governing board, as a guarantee that the employee will repay to the school district the amount of salary so paid to him during the period of suspension in case the decision of the Commission on Professional Competence is that he shall be dismissed. If it is determined that the employee may not be dismissed, the school board shall reimburse the employee for the cost of the bond.

PUSD required Plaintiff to post a bond equal to two years of his salary in order to continue to receive his salary pending a hearing with the CPC. (Amend Galli Decl., Ex. A.) Plaintiff argues, without any supporting evidence or authority, that the amount of the bond was not suitable. He contends, again without any supporting evidence or authority, that it would not have taken two years to complete the hearing before the CPC. In response, Defendants submit evidence demonstrating that dismissal matters have lasted for more than one year after the Board voted to initiate charges. (Declaration of Roy A. Combs in Support of Defendants' Amended Reply, ¶ 7.) In light of Plaintiff's failure to present any evidence on this point, the Court finds that he failed to meet his burden to demonstrate the existence of a material disputed fact. Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's due process claim to the extent it is premised on the amount of the bond.

### iii. **Alleged Bias.**

Lastly, Plaintiff argues that he was deprived of his right to an impartial hearing in violation of due process because there was a conflict of interest on the Board. Pursuant to California law, the governing board of the school district may initiate dismissal proceedings, but the permanent (*i.e.* tenured) employee is entitled to have the dismissal charges against him or her heard by the CPC if, within thirty days after receipt of notice of the charges, the employee demands a hearing. Cal. Educ. Code § 44934. Upon the filing of written charges or

13

1 upon a written statement of charges by the governing board of a school district, the governing
2 board is authorized to suspend the employee without pay, pending the hearing before the CPC,
3 if the employee demands a hearing. *See* Cal. Educ. Code § 44939. "Hearings to determine
4 whether permanent public school teachers should be dismissed or suspended are held before the
5 [CPC] – a three-member administrative tribunal consisting of one credentialed teacher chosen
6 by the school board, a second credentialed teacher chosen by the teacher facing dismissal or
7 suspension, and "an administrative law judge of the Office of Administrative Hearings who
8 shall be chairperson and a voting member of the commission and shall be responsible for
9 assuring that the legal rights of the parties are protected at the hearing." *See California*
10 *Teachers Ass'n*, 20 Cal. 4th at 331-32 (quoting Cal. Educ. Code § 44944(b)).) The CPC's
11 "decision is deemed to be the final decision of the district's governing board." *Id*. at 332 (citing
12 Cal. Educ. Code § 44944(c)(4)).)

13 The California Supreme Court has held that the state has a constitutional obligation to
14 provide a hearing before an impartial and disinterested decision maker to decide whether
15 dismissal or suspension is appropriate. *California Teachers Ass'n*, 20 Cal. 4th at 344.
16 However, the "hearing" to which the court was referring is the hearing before the CPC. *Id*. at
17 331-32; *see also Kolter v. Comm'n on Prof. Competence*, 170 Cal. App. 4th 1346, 1352 n. 4
18 (2009) (noting that the school board's decision to initiate dismissal proceedings under Cal.
19 Educ. Code § 44944 did not effectuate the employee's termination but "was, instead, the
20 prelude to a full evidentiary hearing under Education Code section 44934.")

21 The record shows Plaintiff had notice of the charges against him and was given the
22 opportunity to have a full evidentiary hearing before the CPC and challenge the grounds for his
23 suspension and dismissal. The only reason that this hearing was not held was that Plaintiff
24 retired. Therefore, even if there was a conflict of interest on the Board, such a conflict did not
25 deprive Plaintiff of a hearing before an impartial decision maker. The act that deprived him of
26 that hearing was his retirement. Plaintiff cannot create a due process violation by his own
27 volitional act to forego the hearing. *See Correa v. Nampa Sch. Dist.*, 645 F.2d 814, 817 (9th
28 Cir. 1981) ("[W]here adequate procedures exist, a person cannot state a claim for denial of

14

procedural rights when she has elected to forego a complete hearing."). Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's due process claim to the extent it is premised on lack of a hearing before an impartial decision maker.[3]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment and DENIES AS MOOT Plaintiff's motion for summary adjudication.

**IT IS SO ORDERED.**

Dated: February 6, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff moves for summary adjudication of the following issues: (1) whether, regardless of his property interest in continued employment, he had a property interest in continuing to receive his salary and was deprived of that interest; and (2) whether Mr. McGee was biased when he voted for Plaintiff's termination. Because the Court finds summary judgment against Plaintiff's claim for deprivation of procedural due process is warranted, the Court need not separately address these issues. Accordingly, the Court denies Plaintiff's motion as moot.