1

2

3

4

5

6                       IN THE UNITED STATES DISTRICT COURT

7

8                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   TIM GALLI,

10          Plaintiff,                           No. C 09-03775 JSW

11      v.

12   PITTSBURG UNIFIED SCHOOL DISTRICT,        **ORDER REGARDING MOTIONS**
    BARBARA WILSON and PERCY MCGEE,           **FOR SUMMARY JUDGMENT**
13
            Defendants.
14   _____/

15

16          Now before the Court is the motion for summary judgment filed by Defendants

17   Pittsburg Unified School District (the "PUSD"), Superintendent Barbara Wilson ("Wilson") and

18   Percy McGee ("McGee") (collectively, "Defendants") and the motion for summary adjudication

19   of issues filed by Plaintiff Tim Galli ("Plaintiff").  Having carefully reviewed the parties' papers

20   and the relevant legal authority, the Court hereby grants Defendants' motion for summary

21   judgment and denies Plaintiff's motion for summary adjudication.

22                               **BACKGROUND**

23          In this action, Plaintiff is suing Defendants for what he contends was an improper

24   discharge and suspension of pay without proper due process and retaliation for protected

25   speech.  Plaintiff was the Director of New Construction, Maintenance, Operations, Facilities,

26   Grounds, Technology, and Career Technical Education for the PUSD.  Wilson was, during the

27   operative time, the PUSD Superintendent and McGee was a member of the PUSD's Board of

28   Trustees ("Board").  Plaintiff reported directly to Assistant Superintendent of Business, Mark

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    Bonnett ("Bonnett"), and his "second-line" supervisor was Superintendent Wilson.  (First

2    Amended Compl. ("FAC"), ¶ 28.)

3           On May 14, 2009, Wilson sent Plaintiff a letter which stated, *inter alia*: "The Board of

4    Education has directed me to suspend your pay while you are on leave from the District,

5    effective May 15, 2009."  (Declaration of Mark L. Venardi in Opposition to Defendants'

6    Motion for Summary Judgment ("Venardi Decl."), Ex. J.)   On May 14, 2009, Plaintiff also

7    received from PUSD a "Notice of Intent to Immediately Suspend and Dismiss and Statement of

8    Charges of Dismissal."  (Amended Declaration of Timothy Galli in Opposition of Defendants'

9    Motion ("Amended Galli Decl."), ¶ 2, Ex. A.)  The Notice is dated May 13, 2009.  (*Id*., Ex. A at

10   p. 3.)  The Notice states that Plaintiff was "immediately suspended pursuant to [California

11   Education Code §] 44939" and that Plaintiff was entitled to post a bond with the PUSD equal to

12   two years of his salary if he wished to continue receiving his salary as set forth in Section

13   44393.  (*Id*., Ex. A.).

14          Plaintiff initially stated that he was suspended without pay on May 15, 2009.

15   (Declaration of Timothy Galli in Opposition to Defendants' Motion ("Orig. Galli Decl."), ¶ 13.)

16   However, in his amended declaration, Plaintiff changes his testimony and states that "It was and

17   is my belief that my suspension without pay began on May 13, 2009. ..."  (Amended Galli

18   Decl,, ¶ 6.)   Wilson testified that Plaintiff's employment status changed from being on leave

19   with pay to leave without pay on May 13, 2009.  (Venardi Decl., Ex. A (Deposition of Barbara

20   Wilson) at 56:9-16.)  Defendants also stated in response to requests for admissions that Plaintiff

21   was "immediately suspended without out pay ... on or about May 13, 2009."  (*Id*., Ex. E

22   (Response to Request for Admission No. 48).)  Defendants' payroll records indicate that

23   Plaintiff's last day of paid service was May 14, 2009.  (Declaration of Karen Williams in

24   Support of Defendants' Amended Motion, Ex. 1.)

25          Pursuant to California Education Code §§ 44934 and 44939, Plaintiff had thirty days to

26   request a hearing before Commission on Professional Competence ("CPC").  Plaintiff requested

27   a hearing before the CPC within the thirty-day window.  A hearing was initially scheduled for

28   August 5 through 6, 2009, but pursuant to a joint request for a continuance, the hearing was

1    continued to October 27 though 29, 2009. (Declaration of Joshua A. Stephens ("Stephens

2    Decl."), Ex. 1.) However, before the hearing was held, Plaintiff retired. His retirement was

3    effective on July 1, 2009. (*Id*., Ex. 2.) Upon receiving notice of Plaintiff's retirement, the CPC

4    dismissed the proceedings. (*Id*., Ex. 3.)

5          The Court will address additional specific facts as required in the analysis.

6                                         **ANALYSIS**

7    **A.     Standards Applicable to Motions for Summary Judgment.**

8          A principal purpose of the summary judgment procedure is to identify and dispose of

9    factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).

10   Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and

11   admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

12   any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

13   Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the

14   evidence or make credibility determinations, and is required to draw all inferences in a light

15   most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.

16   1997).

17         The party moving for summary judgment bears the initial burden of identifying those

18   portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine

19   issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is

20   sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v.

21   Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the

22   outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the

23   ultimate burden of persuasion at trial, that party must produce evidence which either negates an

24   essential element of the non-moving party's claims or that party must show that the non-moving

25   party does not have enough evidence of an essential element to carry its ultimate burden of

26   persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.

27   2000). Once the moving party meets its initial burden, the non-moving party must go beyond

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine

2    issue for trial." Fed. R. Civ. P. 56(e).

3         In order to make this showing, the non-moving party must "identify with reasonable

4    particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275,

5    1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact

6    must take care adequately to point a court to the evidence precluding summary judgment

7    because a court is "'not required to comb the record to find some reason to deny a motion for

8    summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th

9    Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418

10    (9th Cir. 1988)). If the non-moving party fails to point to evidence precluding summary

11    judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

12    **B.**      **Defendants' Motion.**

13        **1.**        **Plaintiff's First Amendment Claim.**

14         To prevail on a claim against a government employer for violation of the First

15    Amendment, an employee bears the burden of demonstrating: "(1) whether the plaintiff spoke

16    on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public

17    employee; [and] (3) whether the plaintiff's protected speech was a substantial or motivating

18    factor in the adverse employment action." *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009)

19    (quoting *Eng v. Cooley,* 552 F.3d 1062, 1070 (9th Cir. 2009)). If the employee meets this

20    burden, the employer may prevail by demonstrating either that: (a) under the balancing test

21    established by *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968), that its "legitimate administrative

22    interests outweigh the employee's First Amendment rights;" or (b) "under the mixed motive

23    analysis established by *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287

24    (1977), the employer would have reached the same decision even in the absence of the

25    employee's protected conduct." *Roe v. City of San Diego,* 356 F.3d 1108, 1112, *rev'd on other*

26    *grounds,* 125 S.Ct. 521 (2004); *see also Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917,

27    923 (9th Cir. 2004).

28

United States District Court

For the Northern District of California

1    The parties dispute whether Plaintiff has alleged sufficient facts to demonstrate whether

2    he spoke as a private citizen or as a public employee.  In *Garcetti v. Ceballos*, 547 U.S. 410

3    (2006), the Supreme Court held that when a public employee speaks pursuant to his or her

4    official duties, the speech is not protected because any restriction on that speech "simply

5    reflects the exercise of employer control over what the employer itself has commissioned or

6    created." *Id*. at 422.  The Court distinguished "work product" that "owes its existence to [an

7    employee]'s professional responsibilities" from "contributions to the civic discourse," which

8    "retain the prospect of constitutional protection" for the speaker.  *Id*. at 421-22.  The Ninth

9    Circuit has held "that statements are made in the speaker's capacity as citizen if the speaker

10   'had no official duty' to make the questioned statements, ... or if the speech was not the product

11   of 'perform[ing] the tasks [the employee] was paid to perform.'"  *Posey v. Lake Pend Oreille*

12   *Sch. Dist. No. 84*, 546 F.3d 1121, 1127 (9th Cir. 2008) (quoting *Marable v. Nitchman*, 511 F.3d

13   924, 932-933 (9th Cir. 2007) and *Freitag v. Ayers,* 468 F.3d 528, 544 (9th Cir. 2006)).

14   The determination of whether the speech in question was spoken as a public employee

15   or a private citizen is a mixed question of fact and law.  *Id*. at 1129, 1131 (holding that "when

16   there are genuine and material disputes as to the scope and content of the plaintiff's job

17   responsibilities, the court must reserve judgment ... until after the fact-finding process."); *see*

18   *also Robinson,* 566 F.3d at 823-824 (holding that the scope of the public employee's job duties

19   was a question of fact").  "'[T]he question of the scope and content of a plaintiff's job

20   responsibilities is a question of fact,' [but] the 'ultimate constitutional significance of the facts

21   as found' is a question of law." *Eng,* 552 F.3d at 1071 (quoting *Posey*, 546 F.3d at 1129-30.)

22   Here, Plaintiff raised concerns to his direct supervisor, Mark Bonnett, to Wilson, and to

23   members of the Board, including McGee regarding: (1) improper use of deferred maintenance

24   funding; (2) the possible encroachment by the adult education program into the general fund

25   and the ADA funding stream for K-12; (3) the failure of the adult education program to pay

26   operational costs in water and electrical, and its failure to contribute for maintenance, grounds,

27   and technology services; and (4) violations committed during the modernization of the Boy's

28   and Girl's Club.  (Orig. Galli Decl., ¶ 5.)  Plaintiff also became aware of and raised concerns to

5

United States District Court
For the Northern District of California

1   members of the Board that the PUSD had issued a $3.3 million contract for the construction of a

2   new District high school without utilizing the required public bidding process.  (*Id.*, ¶ 7.)

3            The parties do not dispute the substance of Plaintiff's job responsibilities.  Plaintiff's

4   responsibilities in his position with PUSD included: (1) planning, organizing, and directing the

5   maintenance and operations programs; (2) recommending building programs and priorities and

6   preparing and submitting application plans for state funds; (3) coordinating, implementing, and

7   supervising the construction, modernization, reconstruction and relocation of new and existing

8   schools and district facilities; (4) coordinating the selection, monitoring and supervision of

9   services provided by architects, engineers, contractors, inspectors, and others used in support of

10  facility programs; (5) conducting investigations and making recommendations related to

11  planning, design, construction, change orders, design modification and contract administration

12  in the district's building programs; (6) assisting in the budget planning and workload

13  management activities of administrators and school principals regarding maintenance; and (7)

14  other duties as assigned.  (Combs Decl., Ex. 4 (Galli Depo.) at 32:19-21 and Ex. 3.)

15           Accordingly, the Court is tasked with determining the ultimate constitutional

16  significance of these facts as question of law.  *See Eng,* 552 F.3d at 1071.  Plaintiff testified that

17  the concerns he reported regarding deferred maintenance funding and the adult education

18  program were discovered as part of his effort to find funding, as directed by his supervisor, in

19  order to save jobs in his program.  He stated that:

20           as a supervisor, I owed it to my employees, if there was a source of funding out
             there that would help them save their jobs – if we're spending money on adult
21           education and it's improper and there's a source of money for maintenance that
             might possibly save jobs, I had both a moral and an ethical responsibility to see
22           that the money was returned to maintenance.

23  (Combs Decl., Ex. 4 (Galli Depo.) at 73:24-74:6.)  He further testified, with respect to the

24  concerns he expressed regarding the Girl's and Boy's Club, that he believed it was part of his

25  job to be aware of any potential obligations against PUSD's properties.  (*Id*, Ex. 4 at 176:10-

26  15.)  Plaintiff's supervisor and Wilson also testified that when Plaintiff raised these concerns, he

27  was doing so as part of his job duties.  (Combs Decl., Ex. 5 (Deposition of Mark Bonnett) at

28  68:3-13, 71:13-22 and Ex 6 (Deposition of Barbara Wilson) at 105:4-106:5.)

United States District Court

For the Northern District of California

1    Plaintiff does not dispute that when he raised these concerns, he was acting pursuant to

2    his job responsibilities.  Instead, what he argues is that, while he made these disclosures as an

3    employee, he was also, "in part," making them as a concerned public citizen.  (Opp. at 10.)  In

4    support of this argument, Plaintiff cites to testimony from his supervisor that although he

5    believed Plaintiff was coming forward as part of his job duties, Plaintiff was also, in part,

6    coming forward as a citizen.  (Venardi Decl., Ex. D (Bonnett Depo.) at 68:3-13.)   Additionally,

7    in an email in which Plaintiff raised some of these concerns regarding deferred maintenance

8    funding with his supervisor, Plaintiff wrote "[t]he more I observe this process, the more

9    offended I become, both as an employee, a taxpayer of Pittsburgh, and a PUSD alumni."  (*Id.*,

10    Ex D at 69:14-70:18.)

11    However, because Plaintiff does not dispute that he made the disclosures at issue

12    pursuant to his job duties, he cannot defeat summary judgment by arguing that, simultaneously,

13    he also cared about these topics as a citizen.  "[W]hen public employees make statements

14    pursuant to their official duties, the employees are not speaking as citizens for First Amendment

15    purposes. ..."  *Ceballos*, 547 U.S. at 421-22 (finding it "immaterial" that the employee

16    "experienced some personal gratification from writing the memo").

17    Plaintiff also argues that he made these disclosures to persons "outside of his chain of

18    command."  (Opp. at 11.)  In addition to speaking to his direct supervisor, Plaintiff raised these

19    concerns with Wilson and with several members of the Board.  Plaintiff alleges that he raised

20    these concerns directly to Wilson, McGee and Arenviar because he did not trust Wilson or his

21    supervisor to act in response to his concerns.  (FAC, ¶ 37.)  Moreover, he knew that the Board

22    had oversight responsibilities over the allocation of all PUSD resources and must approve any

23    expenditure over $10,000.  (*Id.*, ¶ 38.)  These allegations are binding on Plaintiff as judicial

24    admissions.  *See American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)

25    ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial

26    admissions conclusively binding on the party who made them. ...A statement in a complaint ...

27    is a judicial admission.").

28

United States District Court

For the Northern District of California

1   The Ninth Circuit has not found that raising concerns internally, to persons above the

2   plaintiff's direct supervisor, renders the statements made to be protected speech.  For example,

3   in *Freitas*, 468 F.3d at 533-34, the plaintiff, who was a prison guard, made complaints to

4   several individuals within the prison who were above her direct supervisor, including a

5   Lieutenant's supervisor, the associate warden, the warden, and the director of the California

6   Department of Corrections and Rehabilitation ("CDCR").  Among these individuals, the only

7   one the court had concerns about was the CDCR director.  The court held that whether

8   Plaintiff's letter to the CDCR was constitutionally protected under the First Amendment was a

9   "closer question."  The court was "unsure whether prison guards [were] expected to air

10  complaints regarding conditions in their prisons all the way up to the Director of the CDCR at

11  the state capitol in Sacramento."  *Id*. at 546.  Similarly, in *Huppert v. City of Pittsburgh*, 574

12  F.3d 696, 699 (9th Cir. 2009), two police officers wrote a report and directed it to the chief of

13  police and the city manager, neither of whom were the officers' direct supervisor.  Nevertheless,

14  the court held that the report was not protected speech.  *Id*. at 707.

15          In accordance with *Freitas* and *Huppert*, the Court finds that raising his concerns with

16  the superintendent and several board members, does not render Plaintiff's statements protected

17  speech.  Perhaps if Plaintiff had raised his concerns with the State Secretary of Education,

18  analogous to the Director of the CDCR, the Court might find it to be a closer question.

19  However, because Plaintiff only raised his concerns internally, to those who were ulitmately

20  responsible for the school expenditures in question, the Court finds that Plaintiff fails to

21  demonstrate that he was speaking as a citizen, as opposed to an employee.  Accordingly, the

22  Court grants Defendants' motion for summary judgment on Plaintiff's First Amendment claim.

23          **2.      Plaintiff's Procedural Due Process Claim.**

24          The Fourteenth Amendment provides that no State shall "deprive any person of life,

25  liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  To state a

26  violation of procedural due process, as a government employee, Plaintiff must show: (1) a

27  property interest in his continued employment, (2) deprivation of that interest, and that his

28  government employer either (3) did not notify him of the charges against him, or (4) did not

8

**United States District Court**
For the Northern District of California

1    give him an opportunity to respond before his interest was deprived.  *See Cleveland Bd. of*

2    *Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  However, due process does not always require

3    a pre-deprivation hearing.  "[W]here a State must act quickly, or where it would be impractical

4    to provide pre-deprivation process, post-deprivation process satisfies the requirements of the

5    Due Process Clause."  *Gilbert v. Homar,* 520 U.S. 924, 930 (1997).  When there is an

6    "important government interest, accompanied by a substantial assurance that the deprivation is

7    not baseless or unwarranted," the state may be justified in delaying "the opportunity to be heard

8    until after the initial deprivation."  *FDIC v. Mallen,* 486 U.S. 230, 240 (1988).  Due process

9    does not entitle a public employee to a pre-suspension hearing so long as a post-suspension

10    hearing is held promptly and the employer's decision to suspend the employee is not "baseless

11    or unwarranted."  *Mustafa v. Clark County Schl. Dist.*, 157 F.3d 1169, 1177 (9th Cir. 1998).

12         In *Mustafa*, a former student filed a police report accusing the teacher of "open and

13    gross lewdness" at an after-school meeting.  Upon receipt of this information, the school district

14    immediately suspended the teacher without pay.  *Id*. at 1172.  At an arbitration, the arbitrator

15    ruled that the accusations against the teacher could not be substantiated by clear and convincing

16    evidence and ordered that the teacher be reinstated with back pay.  *Id*. at 1173.  The district

17    attorney filed a criminal complaint against the teacher, but the charge was dismissed due to

18    insufficient evidence.  *Id*.  The Ninth Circuit reasoned that, "[a]s a public school teacher,

19    Mustafa occupies a position of great public trust and high visibility."  *Id*. at 1177 (internal

20    quotation marks omitted).  Despite the fact that the charges against the teacher were never

21    substantiated, the court found that the school district's decision to suspend him was not

22    "baseless or unwarranted."  *Id*.

23         Moreover, "where adequate procedures exist, a person cannot state a claim for denial of

24    procedural rights when she has elected to forego a complete hearing."  *Correa v. Nampa Sch.*

25    *Dist.*, 645 F.2d 814, 817 (9th Cir. 1981).

26         The California Supreme Court has held that:

27         The state has a constitutional obligation to provide a hearing to decide whether dismissal or suspension is appropriate. A teacher also has a right to an

28         opportunity to respond to the particular charges asserted by the district and to clear his or her name. An opportunity to challenge the state's factual

9

United States District Court

For the Northern District of California

determinations before an impartial and disinterested decision maker satisfies the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process.

*California Teachers Ass'n v. State of California*, 20 Cal. 4th 327, 344 (1999) (internal quotation marks and citation omitted).

Plaintiff does not challenge the sufficiency of the procedures under California law, but rather, contends that Defendants failed to follow these procedures and thereby denied him due process. Plaintiff contends that he was not afforded due process because (1) he was not given adequate prior notice before he was suspended without pay, (2) his conduct did not constitute "immoral conduct," and (3) the decision makers were biased. Plaintiff also contends that by placing him on administrative leave without pay, he was constructively discharged because the amount of the bond was too high.

### i.      Notice of Suspension.

As Plaintiff states, it is undisputed that he was a permanent employee as defined by the California Education Code and that California Education Code Section 44939 governed the statutory procedures required to be followed before he could have been suspended without pay. (Plaintiff's Amended Opp. at 8.) California Education Code Section 44939 provides:

Upon the filing of written charges, duly signed and verified by the person filing them with the governing board of a school district, or upon a written statement of charges formulated by the governing board, charging a permanent employee of the district with immoral conduct ... the governing board may, if it deems such action necessary, immediately suspend the employee from his duties and give notice to him of his suspension, and that 30 days after service of the notice, he will be dismissed, unless he demands a hearing.

... In such event the permanent employee who demands a hearing within the 30-day period shall continue to be paid his regular salary during the period of suspension and until the entry of the decision of the Commission on Professional Competence, if and during such time as he furnishes to the school district a suitable bond, as a guarantee that the employee will repay to the school district the amount of salary so paid to him during the period of suspension in case the decision of the Commission of Professional Competence is that he shall be dismissed. If it is determined that the employee may not be

10

dismissed, the school board shall reimburse the employee for the cost of the bond.[1]

It is undisputed that on May 14, 2009, Plaintiff was given notice of the charges against him and that PUSD was suspending him without pay and filed charges for his dismissal.  The parties dispute when his suspension without pay began.  Plaintiff argues that his suspension without pay began the day before he was given notice.  Defendants, on the other hand, argue that his suspension without pay began the day after he was given notice.  However, regardless of whether Plaintiff's suspension without pay started the day before or the day after he was given notice, pursuant to the statute, Defendants were authorized to immediately suspend Plaintiff without pay upon the filing of writing charges or upon a written statement of charges formulated by the school board.  *See* Cal. Educ. Code § 44939; *California Teachers Ass'n*, 20 Cal. 4th at 331 ("The charge of immoral conduct, based upon allegations that plaintiff engaged in inappropriate verbal exchanges with students, permitted the district to suspend plaintiff immediately without pay.") (citing Cal. Educ. Code § 44939).  Due process did not entitle Plaintiff to a pre-suspension hearing so long as a post-suspension hearing was held promptly and the PUSD's decision to suspend him was not "baseless or unwarranted."  *Mustafa*, 157 F.3d 1169, 1177 (9th Cir. 1998).  Had Plaintiff not retired, he would have had a hearing before the PCP.  In fact, a hearing was scheduled for August 5 through 6, 2009, and then continued to October 27 though 29, 2009, but the proceedings before the CPC were dismissed when the CPC discovered Plaintiff had retired.  (Stephens Decl., Exs. 1, 3.)

Plaintiff does not argue that Defendants' decision to suspend him was "baseless or unwarranted."  Instead he argues that his public urination incident did not amount to conduct demonstrating an unfitness to teach because it was an isolated incident and no students witnessed the event.  The California Supreme Court has clarified that the term "immoral

---

[1] Plaintiff reads this statute as limiting the grounds for immediate suspension without pay to "knowing membership in a Communist Party."  Based on the plain language of this statute, the Court does not read Section 44939 as so limited.  Nor, apparently does the California Supreme Court.  *See California Teachers Ass'n*, 20 Cal. 4th at 331 ("The charge of immoral conduct, based upon allegations that plaintiff engaged in inappropriate verbal exchanges with students, permitted the district to suspend plaintiff immediately without pay.") (citing Cal. Educ. Code § 44939). Therefore, the Court rejects this argument.

**United States District Court**
For the Northern District of California

1   conduct" in the California Education Code "embrace[s] only conduct demonstrating unfitness to

2   teach," *see Fontana Unified School Dist. v. Burman*, 45 Cal. 3d 208, 219-220 (1988) (citing

3   *Morrison v. State Board of Education*, 1 Cal. 3d 214, 229-230 (1969)).

4           The Notice of Intent to Immediately Suspend and Dismiss and Statement of Charges for

5   Dismissal provides the PUSD's basis for his immediate suspension.  The Notice states that on a

6   school day in December of 2008, Plaintiff was observed walking over to a Mini Cooper driven

7   by a PUSD contractor, unzipping his pants and urinating on the car while the contractor sat

8   inside the car.  (Amended Galli Decl., Ex. A.)  At the time of the urination incident, the car was

9   parked in front of the Pittsburgh High School and there were students outside in front of the

10  school.  (*Id*.)  When Plaintiff was confronted about the incident, he admitted that he had

11  urinated on the car, but insisted that it happened in August, "presumably to point out that no

12  students would have been around."  (*Id*.)  The PUSD determined that Plaintiff lied about when

13  the incident occurred and, thus, found that "Immoral Conduct" and "Dishonesty" supported his

14  immediate suspension.  (*Id*.)  Plaintiff has not asserted in these cross-motions for summary

15  judgment that the independent grounds of dishonesty supporting the PUSD's decision was

16  improper or unsupported.  Thus, regardless of whether Plaintiff's immoral conduct

17  demonstrated an unfitness to teach, based upon the PUSD's uncontroverted charges of

18  dishonesty, the Court finds that Plaintiff has not demonstrated the existence of a material

19  disputed fact regarding whether Defendants' decision to suspend him was entirely "baseless or

20  unwarranted."[2]  Accordingly, the Court grants Defendants' motion for summary judgment on

21  Plaintiff's due process claim to the extent it is premised on the timing of his notice of the

22  suspension without pay.

23  ///

24  ////

25

26          [2] The Court notes that Plaintiff disputes whether any students actually witnessed his
    urination incident.  However, whether every aspect of the PUSD's decision is ultimately
27  proven is not the standard.  Notably, in *Mustafa*, the school district's decision was reversed
    in arbitration proceedings and criminal charges were ultimately dismissed due to insufficient
28  evidence.  Nevertheless, the court held that the employer's decision to suspend the teacher
    was not "baseless or unwarranted." *Id*., 157 F.3d at 1173.

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii.     **Bond Amount.**

Plaintiff also argues that Defendants violated his Due Process by requiring him to pay a bond amount that was not suitable.  California Education Code § 44939 provides in pertinent part:

> ...the permanent employee who demands a hearing within the 30-day period shall continue to be paid his regular salary during the period of suspension and until the entry of the decision of the Commission on Professional Competence, if and during such time as he furnishes to the school district a suitable bond, or other security acceptable to the governing board, as a guarantee that the employee will repay to the school district the amount of salary so paid to him during the period of suspension in case the decision of the Commission on Professional Competence is that he shall be dismissed.  If it is determined that the employee may not be dismissed, the school board shall reimburse the employee for the cost of the bond.

PUSD required Plaintiff to post a bond equal to two years of his salary in order to continue to receive his salary pending a hearing with the CPC.  (Amend Galli Decl., Ex. A.)  Plaintiff argues, without any supporting evidence or authority, that the amount of the bond was not suitable.  He contends, again without any supporting evidence or authority, that it would not have taken two years to complete the hearing before the CPC.  In response, Defendants submit evidence demonstrating that dismissal matters have lasted for more than one year after the Board voted to initiate charges.  (Declaration of Roy A. Combs in Support of Defendants' Amended Reply, ¶ 7.)  In light of Plaintiff's failure to present any evidence on this point, the Court finds that he failed to meet his burden to demonstrate the existence of a material disputed fact.  Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's due process claim to the extent it is premised on the amount of the bond.

iii.     **Alleged Bias.**

Lastly, Plaintiff argues that he was deprived of his right to an impartial hearing in violation of due process because there was a conflict of interest on the Board.  Pursuant to California law, the governing board of the school district may initiate dismissal proceedings, but the permanent (*i.e.* tenured) employee is entitled to have the dismissal charges against him or her heard by the CPC if, within thirty days after receipt of notice of the charges, the employee demands a hearing.  Cal. Educ. Code § 44934.  Upon the filing of written charges or

13

United States District Court

For the Northern District of California

1    upon a written statement of charges by the governing board of a school district, the governing

2    board is authorized to suspend the employee without pay, pending the hearing before the CPC,

3    if the employee demands a hearing. *See* Cal. Educ. Code § 44939. "Hearings to determine

4    whether permanent public school teachers should be dismissed or suspended are held before the

5    [CPC] – a three-member administrative tribunal consisting of one credentialed teacher chosen

6    by the school board, a second credentialed teacher chosen by the teacher facing dismissal or

7    suspension, and "an administrative law judge of the Office of Administrative Hearings who

8    shall be chairperson and a voting member of the commission and shall be responsible for

9    assuring that the legal rights of the parties are protected at the hearing." *See California*

10   *Teachers Ass'n*, 20 Cal. 4th at 331-32 (quoting Cal. Educ. Code § 44944(b)).) The CPC's

11   "decision is deemed to be the final decision of the district's governing board." *Id*. at 332 (citing

12   Cal. Educ. Code § 44944(c)(4)).)

13          The California Supreme Court has held that the state has a constitutional obligation to

14   provide a hearing before an impartial and disinterested decision maker to decide whether

15   dismissal or suspension is appropriate. *California Teachers Ass'n*, 20 Cal. 4th at 344.

16   However, the "hearing" to which the court was referring is the hearing before the CPC. *Id*. at

17   331-32; *see also Kolter v. Comm'n on Prof. Competence*, 170 Cal. App. 4th 1346, 1352 n. 4

18   (2009) (noting that the school board's decision to initiate dismissal proceedings under Cal.

19   Educ. Code § 44944 did not effectuate the employee's termination but "was, instead, the

20   prelude to a full evidentiary hearing under Education Code section 44934.")

21          The record shows Plaintiff had notice of the charges against him and was given the

22   opportunity to have a full evidentiary hearing before the CPC and challenge the grounds for his

23   suspension and dismissal. The only reason that this hearing was not held was that Plaintiff

24   retired. Therefore, even if there was a conflict of interest on the Board, such a conflict did not

25   deprive Plaintiff of a hearing before an impartial decision maker. The act that deprived him of

26   that hearing was his retirement. Plaintiff cannot create a due process violation by his own

27   volitional act to forego the hearing. *See Correa v. Nampa Sch. Dist.*, 645 F.2d 814, 817 (9th

28   Cir. 1981) ("[W]here adequate procedures exist, a person cannot state a claim for denial of

procedural rights when she has elected to forego a complete hearing.").  Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's due process claim to the extent it is premised on lack of a hearing before an impartial decision maker.[3]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment and DENIES AS MOOT Plaintiff's motion for summary adjudication.

**IT IS SO ORDERED.**

Dated: February 6, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

---

[3] Plaintiff moves for summary adjudication of the following issues: (1) whether, regardless of his property interest in continued employment, he had a property interest in continuing to receive his salary and was deprived of that interest; and (2) whether Mr. McGee was biased when he voted for Plaintiff's termination.  Because the Court finds summary judgment against Plaintiff's claim for deprivation of procedural due process is warranted, the Court need not separately address these issues.  Accordingly, the Court denies Plaintiff's motion as moot.